Receipt Number
554 878

82

Exhibits 1-2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ACME Contracting, Ltd.<br>1668 Telegraph Road<br>Bloomfield Hills, MI 48302<br><br>Plaintiff,<br><br>-vs-<br><br>Toltest, Inc.<br>1480 Ford St.<br>Maumee, Ohio 43560<br><br>and<br><br>Berkley Regional Insurance Company<br>475 Steamboat Road<br>Greenwich, CT 06830<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case: 2:07-cv-10950<br>Assigned To: Cox, Sean F<br>Referral Judge: Komives, Paul J<br>Filed: 03-05-2007 At 03:57 PM<br>rem ACME CONTRACTING V. TOLTEST, INC, ET AL (TAM)<br><br>NOTICE OF REMOVAL<br><br>Richard M. Kerger (Ohio Bar # 0015864)<br>KERGER & ASSOCIATES<br>33 S. Michigan St., Suite 100<br>Toledo, Ohio 43604<br>Telephone: (419) 255-5990<br>Fax: (419) 255-5997<br>Email: rkerger@kergerkerger.com<br><br>William J. Lamping, Esq. (MI Bar # P-30785)<br>VESTEVICH, MALLENDER, DUBOIS &<br>DRITSAS, P.C.<br>6905 Telegraph Road, Suite 300<br>Bloomfield Hills, Michigan 48301-3160<br>Phone: (248) 642-1920<br>Fax: (248) 642-2095<br>Email: wlamping@vmddlaw.com<br>*Counsel for Defendants* |

Defendants Toltest, Inc. ("Toltest") and Berkley Regional Insurance

Company ("Berkley"), by and through counsel, hereby file this Notice of Removal as

provided by Title 28, U.S. Code §1441 to the United States District Court for the Eastern

District of Michigan from the Circuit Court for the County of Livingston, Michigan where

the action styled *Acme Contracting, LTD. v Toltest, Inc. et, all*, Case No. 07-22637-CK is now

pending and states:

       1.    This cause was commenced in the Circuit Court for the County of

Livingston, State of Michigan on February 2, 2007 and process was served on Defendant

Toltest on February 15, 2007. A copy of all documents served upon Toltest is attached as **Exhibit 1**. A copy of the entire contents of the official file maintained by the Livingston County Clerk of Courts is attached as **Exhibit 2**.

2.     The action is a civil action for damages and the United States District Court for the Eastern District of Michigan has jurisdiction by reason of the diversity of citizenship of the parties.

3.     Plaintiff seeks damages in excess to compensate it for all economic injury Defendant is alleged to have caused via breach of contract and tortuous conduct for an amount not less than $2.3 million. (See Complaint, p. 9.)

4.     At the time of the commencement of this action in state court, and since that time, Plaintiff Acme was and is now a corporation, incorporated and existing under and by virtue of the laws of the State of Michigan having principal place of business in the State of Michigan.

5.     Defendant Toltest at the time the action was commenced and at the present time still is, a corporation, incorporated and existing under and by virtue of the laws of the State of Ohio, with its principal place of business in Maumee, Ohio.

6.     Defendant Berkley at the time the action was commenced and at the present time still is, a corporation, incorporated and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut.

7.     A copy of all process, pleadings, and orders served upon Defendants are filed with this notice.

8.     Defendants will give written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

9.    A copy of this notice will be filed with the clerk of the Circuit Court for the County of Livingston, State of Michigan as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants request that this action proceed in this Court as an action properly removed to it.

Dated: February 22, 2007

Respectfully submitted,

_____

RICHARD M. KERGER (OH Bar # 0015864)
KERGER & ASSOCIATES
33 S. Michigan St., Suite 100
Toledo, Ohio 43602
Telephone: (419) 255-5990
Fax: (419) 255-5997
Email: rkerger@kergerkerger.com

William J. Lamping, Esq. (MI Bar # 30785 )
VESTEVICH, MALLENDER, DUBOIS &
    DRITSAS
Suite 200, 800 West Long Lake Road
Bloomfield Hills, Michigan 48302
Phone: (248) 642-1920
Fax: (248) 642-2095

*Counsel for Defendants*

3

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via ordinary U.S. Mail

on this _5th_ day of March, 2007 to the following:

> J. Christian Hauser, Esq.
> FRASCO, CAPONIGRO, WINEMAN
>    & SCHEIBLE, PLLC
> 1668 Telegraph Rd. Suite 200
> Bloomfield Hills, MI 48302

Amy Katzman



Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | SUMMONS AND COMPLAINT | CASE NO. |
|---|---|---|
| **44th** JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | 07-22637-CK |

Court telephone no.

Court address
204 S. Highlander Way, Suite 5, Howell, MI 48843                        (517) 546-9816

| Plaintiff name(s), address(es), and telephone no(s).<br>ACME Contracting, Ltd. | v | Defendant name(s), address(es), and telephone no(s).<br>Berkley Regional Insurance Company<br><br>c/o The Corporation Company<br>30600 Telegraph Road<br>Bingham Farms, MI 48025 |
|---|---|---|
| Plaintiff attorney, bar no., address, and telephone no.<br>J. Christian Hauser          P57990<br><br>1668 Telegraph Road, Suite 200<br>Bloomfield Hills, MI 48302<br>(248) 334-6767 | | **JUDGE READER**<br>P-27877 |

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>2-2-07 | This summons expires<br>5-4-07 | Court clerk<br>KR | MARGARET M. DUNLEAVY<br>CLERK OF THE CIRCUIT COURT<br>HOWELL, MICHIGAN 48843 |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Northville, Michigan | Defendant(s) residence (include city, township, or village)<br>Des Moines, Iowa |
|---|---|
| Place where action arose or business conducted<br>Atlanta, Georgia | |

02/01/2007
Date

*Christian Hauser*
Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (8/04)  **SUMMONS AND COMPLAINT**     MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

ACME CONTRACTING, LTD.,

Plaintiff,

v.

TOLTEST, INC., and BERKLEY REGIONAL
INSURANCE COMPANY,

Defendants.

Case No. 07-22637-CK

JUDGE READER
P-27877

J. Christian Hauser (P57990)
FRASCO CAPONIGRO
WINEMAN & SCHEIBLE, PLLC
Attorneys for Plaintiff
1668 Telegraph Road, Suite 200
Bloomfield Hills, MI 48302
(248) 334-6767

*There is no other pending or resolved civil action
arising out of the same transaction or occurrence
as alleged in the Complaint.*

Plaintiff ACME Contracting, Ltd., ("ACME") through its attorneys, Frasco Caponigro

Wineman & Scheible, PLLC, states for its complaint as follows:

## JURISDICTION AND VENUE

1.      Plaintiff ACME is a Michigan corporation with its primary place of business at

7811 Chubb Road, Northville, Michigan.

2.      Defendant TolTest, Inc. ("TolTest") is an Ohio corporation with a place of

business located at 5295 S. Old US 23, Brighton, Michigan.

3.      Defendant Berkley Regional Insurance Company ("Berkley") is a Delaware

corporation authorized to conduct business in the state of Michigan.

4.     The amount in controversy in this matter exceeds the sum of $25,000.00, exclusive of interest, costs and attorneys fees, and is otherwise within the jurisdiction of this Court.

5.     That venue is proper with this Court.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6.     ACME is a contractor engaged in commercial and industrial demolition, excavation and underground site work.

7.     Upon information and belief, TolTest is a contractor engaged in environmental remediation, design, management and engineering in the construction industry.

8.     TolTest, as principal, and Berkley, as surety, duly executed and furnished to the general contractor The Whiting-Turner Contracting Company ("Whiting-Turner") Payment Bonds Nos. 104043 and 0115196 as required by statute. ("**Exhibit 1**").

9.     Upon information and belief, Whiting-Turner accepted this bond.

10.     Pursuant to the terms and conditions of the bond, TolTest and Berkley bound themselves, jointly and severally, for the payment of the work performed by the subcontractors, including ACME.

11.     On or about June 9, 2006, ACME entered into a Subcontract Agreement ("Agreement") with TolTest in the amount of $1,050,018.00 wherein ACME agreed to perform certain demolition and site work ("Work") at the Georgia Tech Nanotechnology Research Center in Atlanta, Georgia (the "Project"). ("**Exhibit 2**").

12.     Specifically, ACME was responsible for the demolition and site work of the Electronics Research Building ("ERB") and Neely Research Reactor ("Neely Reactor") at the

2

Georgia Tech Nanotechnology Research Center, while TolTest would perform abatement of asbestos, inventoried waste, PCBs, and lead on the structures in question.

13.     The Agreement further incorporated by reference the construction schedule ("Project Schedule") created by TolTest dated May 8, 2006 that provided ACME sixty-seven (67) days to complete the Work. ("**Exhibit 3**").

14.     The TolTest prepared work scope and Project Schedule called for ACME to begin demolition on the ERB, and then proceed to the removal of the Neely Reactor. Both demolition activities were to run concurrently, with the abatement of the Neely Reactor overlapping the abatement of the ERB.

15.     The Project Schedule prepared by TolTest indicated TolTest would turn over the ERB to ACME on Friday, May 19, 2006, and that demolition on the ERB Building would commence on or about Monday, May 22, 2006 and conclude twenty-four (24) days later.

16.     However on May 19, 2006, a fire broke out in the ERB that required a complete building evacuation while dozens of fire crews extinguished the blaze. It was subsequently discovered that the source of the fire was a flashover of volatile mastic remover, coupled with TolTest's failure to de-energize the electrical outlets in the second floor abatement area.

17.     Due to the fire in the ERB caused by TolTest's neglect, ACME was not permitted to begin demolition until June 3, 2006, sixteen (16) days later than scheduled. ("**Exhibit 4**").

18.     Immediately thereafter ACME commenced demolition activities on the ERB, effectively wrecking the structure in four (4) days. As part of its contractual and environmental obligations, ACME submitted the Waste Profile document to TolTest for execution by Georgia Tech officials. A fully completed Waste Profile is required in order for the demolition debris from the ERB to be properly disposed of at a licensed facility.

3

19.     For reasons unknown to ACME, Georgia Tech representatives refused to sign the Waste Profile.

20.     When it became apparent that TolTest was not assisting ACME in securing an executed copy of the Waste Profile, ACME was compelled to request a waiver from the proposed disposal facility in order to accept the demolition debris without an executed Waste Profile. The process of obtaining a waiver delayed the disposal of the debris from June 8, 2006 through June 16, 2006 (seven working days).

21.     ACME completed demolition and disposal activities related to the ERB on June 21, 2006.

22.     Subsequent to the completion of the work on the ERB, ACME timely provided TolTest with a change request for additional compensation of these delay days relative to the demolition of the ERB, however Wayne Lint, TolTest's project manager indicated that the change order would not be approved.

23.     Pursuant to the TolTest Project Schedule, ACME would commence demolition of the Neely Research Reactor on May 24, 2006.

24.     However, as a direct result of TolTest not following its own Work Plan, TolTest was still performing its work inside the Neely Reactor, specifically, asbestos abatement clearance monitoring as late as June 21, 2006.

25.     Finally on July 14, 2006 (fifty-two days later than anticipated), TolTest directed ACME to proceed with the demolition of the Neely Reactor. ("**Exhibit 5**").

26.     From July 14, 2006 through July 28, 2006, ACME performed cutting of the Neely Reactor dome, as well as the overhead crane system. During this entire component of the Work, ACME was compelled to deal with the presence of PCB containing paint, lead based paint, and

4

conflicting personal protective equipment measures that was never anticipated in the contract specifications.

27.     Further delaying ACME's work was the fact that TolTest failed to dismantle its scaffolding inside the reactor for an additional three weeks once the abatement clearance had been completed.

28.     Due to TolTest's failure in its obligation to perform adequate abatement of the Neely Reactor dome, encapsulation of remaining asbestos debris fixed to the underside of the dome was required in order to obtain clearance air sampling.

29.     As part of the demolition process and to conform with the applicable environmental regulations, the exterior of the Neely Reactor was required to be completely contained to insure there was no discharge of hazardous materials into the environment.

30.     Although ACME was ready to proceed with the demolition of the structure on July 28, 2006, TolTest failed to commence containment to the exterior of the Neely Reactor until August 2, 2006, completing this portion of work on August 5, 2006.

31.     ACME began demolition of the Neely Reactor on August 6, 2006 and it quickly became apparent the environmental containment method utilized by TolTest was too small and too low for ACME's equipment, specifically the hydraulic shear, to work effectively.

32.     Further complicating matters was that due to the small dimensions of the segmented containment area, as well as the precarious and shoddy construction of the containment system erected by TolTest, the polyvinyl sheeting would routinely droop and develop holes, impeding the use of the hydraulic shear within the structure.

33.     Additionally, due to the lack of properly designed ventilation of the containment area by TolTest, the interior workspace reached temperatures of 160 degrees Fahrenheit, an

unsafe temperature for crews to work. In order to maintain a safe working environment, ACME was compelled to mobilize chiller units to the site to reduce the temperature.

34.     As a result of TolTest's inability to properly remove all environmental hazards, failure to properly contain the exterior of the Neely Reactor and neglect in maintaining a safe and properly ventilated work area, ACME incurred additional costs and expenses providing a more intensive effort to remove the Neely Reactor dome and exterior.

35.     ACME properly tendered to TolTest a change request for additional compensation as a result of the delays incurred relative to the demolition of the Neely Reactor, however TolTest has refused to compensate ACME for the extra costs.

36.     Pursuant to the Agreement, ACME was required to meet certain compaction requirements as it related to the compaction of on-site soils located in the footprint of the ERB and Neely Reactor.

37.     As stated in the Site Specific Scope of Work found in the specifications contained in the Agreement ("**Exhibit 6**"), ACME was contractually obligated to maintain a compaction rate of "ninety-five (95) percent." Consistent with Section 2200 of the Demolition Specifications ("**Exhibit 7**"), compaction is identified as "having a minimum dry density of 95% as determined by the modified Proctor test (ASTM D1557)".

38.     During excavation and stockpiling activities in early July 2006, the civil engineer for the Project determined that soil conditions were unsuitable for the 95% compaction rate required under the Agreement, and that a 98% standard proctor compaction rate would need to be achieved.

39.     ACME promptly notified TolTest both verbally and in writing that this new compaction rate represented a time and material change to the Agreement. ("**Exhibit 8**").

6

40.     There also came a point during the Work when ACME and TolTest were in negotiations for ACME to perform additional work outside the scope of the Agreement, specifically, site balancing, grading, and utilities installation ("Earthwork") for the entire site.

41.     Even though ACME and TolTest were still in negotiations, on June 26, 2006 TolTest entered into a contract with Whiting-Turner to perform the Earthwork.

42.     When ACME and TolTest were unable to reach an agreement on a concise scope of work, the issue of liquidated damages and pricing for the Earthwork, negotiations between the two parties eventually came to an end in early July, 2006.

43.     Without ACME, TolTest was subsequently unable to perform the contract it executed with Whiting-Turner on June 26, 2006, and accordingly, Whiting-Turner issued its Notice of Default to TolTest on July 27, 2006. ("**Exhibit 9**")

44.     Immediately thereafter, TolTest directed ACME to perform the Earthwork on a time and materials basis as provided for under the Agreement. ("**Exhibit 10**").

45.     From July 5, 2006 through August 27, 2006, ACME performed removal, grading, backfill and compaction of materials at the ERB, as well as grading Sector One (the work performed on a time and material basis) as required by TolTest.

46.     ACME has incurred a significant increase in its total contract price and time as a result of differing site project specifications, delays and interferences encountered during the course of its work.

47.     That despite repeated demands and requests by ACME, TolTest refuses to pay ACME for the base contract work, as well as compensate ACME for the additional costs incurred as a result of the differing site project specifications, delays and interferences caused exclusively by TolTest.

7

48.     That ACME completed the Work in a responsible and professional manner pursuant to the Agreement between ACME and TolTest.

49.     Upon information and belief, the Work provided by ACME has been accepted and paid for by the Owner.

50.     That despite TolTest receiving payment from Whiting-Turner for ACME's Work, and repeated demands for payment by ACME, TolTest refuses to honor its contractual obligations and pay ACME.

## COUNT I
## CLAIM ON THE PAYMENT BOND

51.     ACME reiterates and incorporates all prior allegations as if fully set forth herein.

52.     The Payment Bond serves as a guarantee to both the Owner and TolTest's subcontractors and/or suppliers that payment will be made for labor and materials furnished for the Owner.

53.     ACME entered into the Agreement with the Berkley's principal with the reliance the Work ACME performed would be covered by the Payment Bond.

54.     Although often requested by ACME, TolTest has refused and neglected to pay the outstanding contract balance to ACME and has breached its Agreement with ACME in one or more of the following ways:

      a.     Failure to pay all sums due to ACME under the Agreement, Change Orders and Work Authorizations;

      b.     Failure to process pay applications for payment;

      c.     Failure to pay for requested extras and additions to the Agreement;

      d.     Failure to process change orders and pay for authorized changes; and

      e.     Failure to otherwise comply with the terms of the Agreement.

8

55.   As a direct and proximate result of TolTest's breach of the Agreement and the neglect and refusal of TolTest to pay ACME the balance or portions thereof when due, ACME has sustained damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

## COUNT II
## BREACH OF CONTRACT

56.   ACME reiterates and incorporates all prior allegations as if fully set forth herein.

57.   On or about June 9, 2006, ACME entered into an Agreement with TolTest in the amount of $1,050,018.00 wherein ACME agreed to perform certain demolition and site work at the Georgia Tech Nanotechnology Research Center in Atlanta, Georgia.

58.   In addition, ACME performed additional work and incurred expenses exceeding $1,900,000.00 as a result of differing site project specifications, delays and interferences encountered during the course of its work that were caused entirely by TolTest.

59.   TolTest has paid ACME $595,402.93, leaving a balance due, owing and unpaid by TolTest to ACME in an amount in excess of $2,310,000.00.

60.   At all times relevant hereto, ACME performed all duties required of it under the Agreement with TolTest.

61.   Despite completing all base contract work and/or services, and all additional work and/or services, TolTest has failed and refused to pay ACME in full for its work on the Project.

62.   TolTest's failure and refusal to pay the sums owed for work and/or services completed is a breach of the Agreement between ACME and TolTest.

9

63.    Occasioned on such breach, ACME has suffered damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

## COUNT III
## QUANTUM MERUIT

64.    ACME reiterates and incorporates all prior allegations as if fully set forth herein.

65.    At various times and in various manners as directed by TolTest, ACME performed certain Work with respect to the Project.

66.    At all times relevant hereto, TolTest exercised full direction and control over the prosecution of the Work.

67.    The Work has a substantial commercial value.

68.    To date, TolTest has retained benefit of the Work, but has failed and/or refused to make any payment for the Work performed at its direction and under its control.

69.    Under the circumstances, it is inequitable for TolTest to avoid paying fair market value for the subject Work.

70.    Occasioned on the foregoing, ACME has suffered damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

10

## COUNT IV
## ACCOUNT STATED

71.    ACME reiterates and incorporates all prior allegations as if fully set forth herein.

72.    At various times and in various manners as directed by TolTest, ACME performed Work with respect to the Project.

73.    Upon completion of the Work ACME invoiced TolTest for Work completed.

74.    TolTest received the invoices without voicing objection to the charges set forth therein.

75.    The account as between ACME and TolTest has accordingly become stated. An Affidavit of Account Stated is attached as Exhibit 11.

76.    TolTest has failed and refused to make payment on the account.

77.    Occasioned on the foregoing, ACME has suffered damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

## COUNT V
## FRAUD

78.    ACME reiterates and incorporates all prior allegations as if fully set forth herein.

79.    In order to induce ACME to enter into the Agreement with it and perform Work necessary to complete the Project, TolTest represented to ACME that it would make full payment for Work rendered in a timely fashion.

80.    The representations were material in the context of the transaction.

11

81.    The representations were made with the intent that ACME rely thereon to its detriment and perform Work.

82.    The representations were false when made. In the alternative, the representations were made in reckless disregard of their truth or lack thereof.

83.    ACME in fact relied on the representations to its detriment, and entered into an Agreement with TolTest.

84.    TolTest thereafter failed and refused to make payment for Work ACME furnished pursuant to its request and direction.

85.    The foregoing constitutes fraud as that term is defined by applicable Michigan law.

86.    Occasioned on the fraud of TolTest as set forth in the foregoing particulars, ACME has suffered damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

## COUNT VI
## INNOCENT MISREPRESENTATION

87.    ACME reiterates and incorporates all prior allegations as if fully set forth herein.

88.    In order to induce ACME to enter into an Agreement with it and perform Work necessary to complete the Project, TolTest represented to ACME that it would make full payment for Work rendered in a timely fashion.

89.    The representations were material in the context of the transaction.

12

90.    The representations were made with the intent that ACME rely thereon to its detriment and perform Work.

91.    Although innocently made, the representations were false when made. In the alternative, the representations were made in reckless disregard of their truth or lack thereof.

92.    ACME in fact relied on the representations to its detriment, and entered into an Agreement with TolTest.

93.    TolTest thereafter failed and refused to make payment for the Work ACME furnished pursuant to its request and direction.

94.    The foregoing constitutes innocent misrepresentation.

95.    Occasioned on the innocent misrepresentation of TolTest as set forth in the foregoing particulars, ACME has suffered damages.

WHEREFORE, Plaintiff, ACME Contracting, Ltd., respectfully prays for judgment against Defendants, TolTest, Inc., and Berkley Regional Insurance Company, jointly and severally, in the amount of $2,310,648.14, together with all costs and attorney fees wrongfully incurred in the formulation and prosecution of this action.

FRASCO CAPONIGRO
WINEMAN & SCHEIBLE, PLLC


J. Christian Hauser (P57990)
Attorneys for Plaintiff
1668 Telegraph Rd., Suite 200
Bloomfield Hills, MI 48302
(248) 334-6767

Dated: February 1, 2007

13

# EXHIBIT
# 1

09/06/2006 WED 14:54 FAX                                                    @004/005

# PAYMENT BOND

## THE WHITING-TURNER CONTRACTING COMPANY
## ONE LAKESIDE COMMONS
## 990 HAMMOND DRIVE, SUITE 1100
## ATLANTA, GEORGIA 30329

BOND NO. 104043

KNOW ALL MEN BY THESE PRESENTS:

That      TolTest, Inc.

5295 S. Old US 23, Brighton MI 48114

as Principal, hereinafter called Principal, and  Berkley Regional Insurance Company

475 Steamboat Road, Greenwich, CT 06830

(here insert the name, address and state of incorporation of Surety)

as Surety, hereinafter called Surety, are held and firmly bound unto THE WHITING-
TURNER CONTRACTING COMPANY, 300 East Joppa Road, Towson, Maryland
21286 as Obligee, hereinafter called Obligee, in the amount of  ***See Below
Dollars ($   ***   ), for the payment whereof Principal and Surety bind themselves,
their heirs, executors, administrators, successors and assigns, jointly and severally, firmly
by these presents.

***Two Million One Hundred Twelve Thousand Four Hundred Thirty & 00/100 ($2,112,430.00)
WHEREAS, Principal has by written agreement dated     02-16-06      entered into
Contract No _____ with Obligee for  Demo/Abatement of Neeley Reactor,
_  Electronics Research Building and Site, Georgia Tech Nanotechnology Center _

in accordance with drawings and specifications prepared by    ATC

which Contract is by reference made a part hereof, and is hereinafter referred as a
Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such, that if the
Principal shall promptly make payments to all persons supplying labor, material, rental
equipment, supplies, or services in the performance of said Contract and any and all
modifications of said Contract that may hereafter be made, then this obligation shall be
null and void; otherwise it shall remain in full force and effect.

The said Surety agrees that no change, extension of time, alteration, addition, omission,
or other modification of the terms of either the said Contract or the said Prime Contract,

PA-015
8/95

or both, or in the said work to be performed, or in the specifications, or in the plans, shall
in anywise affect its obligation on this Bond, and it does hereby waive notice of any such
changes, extensions of time, alterations, additions, omissions, and other modifications.

The said Principal and the said Surety agree that this Bond shall inure to the benefit of all
persons supplying labor, material, rental equipment, supplies, or services in the
performance of the said Contract, as well as to the Obligee, and that such persons may
maintain independent actions upon this Bond, in their own names.

IN WITNESS WHEREOF, the above bounden parties have executed this instrument
under their several seals this __28th__ day of _____April_____, 2006__, the name and
corporate seal of each corporate party being hereto affixed and these presents duly signed
by its undersigned representative, pursuant to authority of its governing body.

                                        TolTest, Inc.
                                        _____
                                                Principal

                                                        (Seal)

Witness:

_____            By: _____
                                                Signature

                                        _____
                                        Name and title – type or print

                                        Berkley Regional Insurance Company
                                                        Surety

                                        By: _____
                                                Signature   Attorney-in-Fact
                                        Raymond M. Hundley

PA-015
B/05

**PAYMENT BOND**

**THE WHITING-TURNER CONTRACTING COMPANY**
**ONE LAKESIDE COMMONS**
**990 HAMMOND DRIVE, SUITE 1100**
**ATLANTA, GEORGIA 30329**

BOND NO. 0115106

KNOW ALL MEN BY THESE PRESENTS:
   That  Toltest, Inc
         5295 S. Old US 23, Brighin, MI 48114
as Principal, hereinafter called Principal, and Berkley Regional Insurance Company
         5900 Windward Parkway, Suite 335, Alpharetta, GA 30005
         (Incorporated in Delaware)
         (here insert the name, address and state of incorporation of Surety)

as Surety, hereinafter called Surety, are held and firmly bound unto THE WHITING-
TURNER CONTRACTING COMPANY, 300 East Joppa Road, Towson, Maryland
21286 as Obligee, hereinafter called Obligee, in the amount of One Million Eight Hundred Fifty Four Thousand
Dollars ($1,854,463.00), for the payment whereof Principal and Surety bind themselves, Four Hundred Sixty Three
their heirs, executors, administrators, successors and assigns, jointly and severally, firmly
by these presents.

WHEREAS, Principal has by written agreement dated _____ entered into
Contract No _____ with Obligee for  Georgia Tech Nanotechnology Research
   Center Grading, Shoring and Site Utilities

in accordance with drawings and specifications prepared by _____

which Contract is by reference made a part hereof, and is hereinafter referred as a
Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such, that if the
Principal shall promptly make payments to all persons supplying labor, material, rental
equipment, supplies, or services in the performance of the said Contract and any and all
modifications of said Contract that may hereafter be made, then this obligation shall be
null and void; otherwise it shall remain in full force and effect.

The said Surety agrees that no change, extension of time, alteration, addition, omission,
or other modification of the terms of either the said Contract or the said Prime Contract,

PA-015
8/95

or both, or in the said work to be performed, or in the specifications, or in the plans, shall
in anywise affect its obligation on this Bond, and it does hereby waive notice of any such
changes, extensions of time, alterations, additions, omissions, and other modifications.

The said Principal and the said Surety agree that this Bond shall inure to the benefit of all
persons supplying labor, material, rental equipment, supplies, or services in the
performance of the said Contract, as well as to the Obligee, and that such persons may
maintain independent actions upon this Bond, in their own names.

IN WITNESS WHEREOF, the above bounden parties have executed this instrument
under their several seals this 13th day of July_____, 2006_, the name and
corporate seal of each corporate party being hereto affixed and these presents duly signed
by its undersigned representative, pursuant to authority of its governing body.

TolTest, Inc
_____
Principal

(Seal)

Witness:

_____        By: _____
                                        Signature

                                    _____
                                    Name and title - type or print

                                    Berkley Regional Insurance Company
                                    Surety

                                By: _____
                                        Signature   Attorney-in-Fact

                                    Raymond M. Hundley

PA-015
8/96

# EXHIBIT 2

**Attachment B:**
Scope of Work

## Attachment B: Scope of Work

Provide all labor, supervision, equipment, and transportation to complete the Scope of Work referenced in the attached Trade Contract between The Whiting-Turner Contracting Company and TolTest, Inc.

The following exceptions apply:

### Exceptions for the ERB

Acme will not be responsible for paragraph B, items 1 through 8 as detailed on page T-18. TolTest will provide the signage necessary to comply with rules and regulations relevant solely to asbestos removal.

### Exceptions for Nealy Reactor

Acme will not be responsible for paragraph B, items:

1
2
3
4
5
6
7
9
10
18

TolTest will be responsible for the hauling permits necessary for the removal of asbestos and other hazardous materials.

TolTest will be responsible for providing engineer approved drawings for the scaffold necessary to access asbestos.

TolTest will provide the signage necessary to comply with rules and regulations relevant solely to asbestos removal.

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| ID | Task Name | Work | % Work Complete | Duration | Start |
|----|-----------|------|-----------------|----------|-------|
| 1 | Submittals | 0 hrs | 100% | 16 days | Mon 3/20/06 |
| 2 | Permits | 0 hrs | 100% | 10 days | Mon 3/20/06 |
| 3 | Mobilization | 0 hrs | 100% | 2 days | Mon 4/17/06 |
| 4 | Install Site Protection | 0 hrs | 50% | 5 days | Mon 4/17/06 |
| 5 | Setup 2nd Floor ERB | 0 hrs | 100% | 2 days | Wed 4/26/06 |
| 6 | Abate 2nd Floor ERB | 0 hrs | 100% | 5 days | Mon 5/1/06 |
| 7 | Setup 1st Floor ERB | 0 hrs | 100% | 2 days | Mon 4/24/06 |
| 8 | Abate 1st Floor ERB | 0 hrs | 50% | 5 days | Mon 5/8/06 |
| 9 | Setup Ground Floor ERB | 0 hrs | 40% | 2 days | Fri 5/12/06 |
| 10 | Abate Ground Floor ERB | 0 hrs | 0% | 4 days | Mon 5/15/06 |
| 11 | Remove Other Haz ERB | 0 hrs | 20% | 4 days | Tue 5/16/06 |
| 12 | Utility Disconnects ERB | 0 hrs | 0% | 1 day | Mon 5/22/06 |
| 13 | Tree Removal | 0 hrs | 0% | 2 days | Mon 5/22/06 |
| 14 | Demolish ERB | 0 hrs | 0% | 24 days | Fri 5/19/06 |
| 15 | Fill and Grade ERB | 0 hrs | 0% | 10 days | Fri 5/19/06 |
| 16 | Setup Neely Dome Abatement | 0 hrs | 0% | 5 days | Tue 4/25/06 |
| 17 | Abate Neely Dome | 0 hrs | 0% | 10 days | Tue 5/2/06 |
| 18 | Setup Neely Ground Floor | 0 hrs | 0% | 1 day | Tue 5/16/06 |
| 19 | Abate Neely Ground Floor | 0 hrs | 0% | 5 days | Wed 5/17/06 |
| 20 | Setup Neely Basement | 0 hrs | 0% | 1 day | Tue 5/16/06 |
| 21 | Abate Neely Basement | 0 hrs | 0% | 5 days | Wed 5/17/06 |
| 22 | Remove Other Haz Neely | 0 hrs | 0% | 2 days | Mon 5/22/06 |
| 23 | Remove Dome Neely | 0 hrs | 0% | 4 days | Wed 5/24/06 |
| 24 | Install Shoring Neely | 0 hrs | 0% | 2 days | Tue 5/30/06 |
| 25 | Abate Neely Exterior | 0 hrs | 0% | 27 days | Tue 5/30/06 |
| 26 | Demolish Neely to Final Grade | 0 hrs | 0% | 20 days | Mon 6/19/06 |
| 27 | Neely Site Restoration | 0 hrs | 0% | 10 days | Mon 7/17/06 |
| 28 | Store Front Construction | 0 hrs | 0% | 15 days | Mon 7/10/06 |
| 29 | Complete All Site Work | 0 hrs | 0% | 10 days | Thu 7/13/06 |
| 30 | Punch List | 0 hrs | 0% | 2 days | Thu 7/27/06 |

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/06

| | | | |
|---|---|---|---|
| Task | | Milestone | External Tasks |
| Split | | Summary | External Milestone |
| Progress | | Project Summary | Deadline |

Page 1

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| ID | Task Name | Work | % Work Complete | Duration | Start |
|----|-----------|------|-----------------|----------|-------|
| 31 | Demobilization | 0 hrs | 0% | 2 days | Mon 7/31/06 |
| 32 | Close Out Submittals | 0 hrs | 0% | 45 days | Wed 8/2/06 |

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/06

| Task | | Milestone | | External Tasks | |
| Split | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |

Page 2



Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| | | |
|---|---|---|
| Task | Milestone | External Tasks |
| Split | Summary | External Milestone |
| Progress | Project Summary | Deadline |

Project: Georgia Tech CPM Tracking M
Date: Wed 11/29/06

Page 4

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006



| | | | |
|---|---|---|---|
| Task | | Milestone | External Tasks |
| Split | | Summary | External Milestone |
| Progress | | Project Summary | Deadline |

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/06

Page 5

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| | | May 28, '06 | Jun 4, '06 | Jun 11, '06 | Jun 18, '06 | Jun 25, '06 | Jul 2, '06 |
|---|---|---|---|---|---|---|---|
| W T F | S | S M T W T F | S S M T W T F | S S M T W T F | S S M T W T F | S S M T W T F | S S M T W T F |

Task

Split

Progress

Milestone

Summary

Project Summary

External Tasks

External Milestone

Deadline

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/06

Page 6



Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| | Jul 9, '06 | Jul 16, '06 | Jul 23, '06 | Jul 30, '06 | Aug 6, '06 | Aug 13, '06 | Aug 20, |
|---|---|---|---|---|---|---|---|

0%

Project: Georgia Tech CPM Tracking M
Date: Wed 11/29/06

| Task | | Milestone | | External Tasks | |
| SpR | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |

Page 8

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2006

| | Aug 27, '06 | Sep 3, '06 | Sep 10, '06 | Sep 17, '06 | Sep 24, '06 | Oct 1, '06 |
|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| Task | | Milestone | | External Tasks |
| Split | | Summary | | External Milestone |
| Progress | | Project Summary | | Deadline |

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/05

Page 9

Georgia Tech ERB & Neely Reactor Progress as of May 8, 2005

| '06 | Aug 27, '06 | Sep 3, '06 | Sep 10, '06 | Sep 17, '06 | Sep 24, '06 | Oct 1, '06 |
|---|---|---|---|---|---|---|
| T W T F S | S M T W T F S | S M T W T F S | S M T W T F S | S M T W T F S | S M T W T F S | S M T W T |

Project: GeorgiaTech CPM Tracking M
Date: Wed 11/29/06

| Task | | Milestone | | External Tasks | |
| Split | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |

Page 10

# EXHIBIT
# 4

Jun 05 2006 11:02AM   ACME CONTRACTING LTD.    4048810574        p.3

# ACME CONTRACTING, LTD.
P.O. Box 700523, Plymouth, MI 48170    Ph: 248-374-1911   Fax: 248-374-1922

**DATE:**   6/3/06

**ADDRESS:**   347 FIRST ST. ATLANTA. GA.

**CONTRACTOR:**   ACME CONTRACTING, LTD.
Po Box 700523
Plymouth, MI 48170

**PROJECT:**   R.R.B (NANOTECH) GEORGIA
TECH ATLANTA, GA.

**ENGINEER:**
C.M. WHITING - TRENTR

Permission is hereby granted to Acme Contracting, Ltd.

**By**   TOLTRST

**To**   DEMOLISH E.R.B. @
GEORGIA TECH @ 347 FIRST ST.
ATLANTA, GEORGIA

**ACCEPTED BY:** _____

**DATE:** 6/3/06        TOLTRST

6/3/06

# EXHIBIT
# 5

# ACME CONTRACTING, LTD.

PO Box 700523 Plymouth, MI 48170    Ph: 248-374-1911 Fax: 248-374-1922

DATE:

ADDRESS:

CONTRACTOR:    ACME CONTRACTING, LTD.
PO Box 700523
Plymouth, MI 48170

PROJECT:    Neely Building
Georgia Tech, Atlanta, GA

C.M.:    Whiting Turner

Permission is herby granted to Acme Contracting, Ltd.

BY:    Toltest

TO DO:    *DEMO REACTOR*

DATE:    *7-14-06*    ACCEPTED BY:

# EXHIBIT
# 6

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

EXHIBIT B

SCOPE OF WORK



## A. GENERAL SCOPE REQUIREMENTS

In addition to the items in the Boiler Plate of this trade contract, the contractor is to provide the following items as they apply to the work in each trade contract/purchase order unless specifically noted otherwise in the specific scope requirements. (Note: "provide" shall mean furnish and install).

1. **General Conditions / General Requirements**
   a. Where furnishing and installation of work is indicated by separate parties include:
      1) Furnishing Party - delivery to job site including freight and taxes.
      2) Installing Party - receiving, unloading, inventory, storage, handling and installation.

   b. Whiting-Turner to provide stakeout for limits of disturbance, building corners and horizontal/vertical control. Contractor to provide survey/layout required to perform their work.

   c. Field measurements and verification of existing conditions.

   d. Surface preparation and inspection for proper installation of this work. Include cleanup, etching, flash patching, moisture testing, etc. as required per specifications and manufacturers instructions. Commencement of this work shall constitute acceptance of the substrate as suitable for this work.

   e. Core drilling, cutting, and patching as required to perform this work. Include restoration of all surfaces to original condition. Cutting to be performed as to minimize patching.

   f. Excavation, backfill & mucking/dewatering for this work.

   g. Control wiring required for equipment provided as part of this work and not specified elsewhere in the Contract documents.

   h. Concrete required for this scope of work, which is not detailed on the architectural or structural drawings (e.g. equipment pads, thrust blocks, inertia pads, ductbanks, etc.).

   i. Sleeves, inserts, and anchors for this work.

   j. Additional reinforcement/supports for this work, which are not specifically identified on the architectural and structural drawings.

   k. Sealants, caulking and firestopping integral with this work.

   l. Permit fees, licenses, testing and inspection for this work other than the building permit. Testing for soil compaction, structural steel and concrete will be performed by an independent testing agency of the Owner's choice. Contractor shall coordinate and cooperate with the testing agency and provide assistance and access, as necessary.

   m. Scaffolding, lifts, cranes and other means of access for this work.

   n. Unloading, Hoisting, and maintenance of traffic.

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2c

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

o.  Temporary staging, storage, and office facilities including utilities for the same.

p.  Temporary weather and dust protection for this work.

q.  Temporary protection of new and existing work from damage by this work. Trade contractor to repair damage at own expense.

r.  Temporary sheeting, shoring and bracing as required to perform this work.

s.  Temporary barricades shall be placed and maintained by the contractor creating the hazard, or when necessary to facilitate the next sequence of construction. The contractor responsible for the next sequence of construction is then responsible for the barricades if a hazard still exists. Contractors who disturb barricades shall restore them to meet safety requirements, at their own expense. The foregoing "barricades" applies equally to all safety, weather and dust protection provisions. Whiting-Turner shall have the right to determine the suitability of any and all barricades.

t.  Compliance with local noise restrictions.

u.  Owner, Whiting-Turner & OSHA safety requirements. (See Supplemental Conditions for Whiting-Turner Non-OSHA rules).

v.  Full-time, competent on-site supervision is required by all Contractors during performance of their own work. In the case of contracts involving Second Tier Subcontractors, the Primary Contractor will provide on-site supervision and coordination of their subcontractors and direct their work. The contractor will be backcharged for time spent performing such coordination by Whiting-Turner.

w.  This contractor shall procure a minimum of one (1) Whiting-Turner compatible Nextel radio and charger for the purpose of field communication. At all times during the course of the work, the subcontractor shall maintain communication for safety and security reasons.

x.  This contractor understands that this is a fast-track project and during the execution of the work, the site will be congested with many other trades. The subcontractor should not assume that construction can be carried out in a continuous, uninterrupted manner.

y.  This contractor shall execute the work by means of workmanship that meets or exceeds industry standards. Any work that is found to be out of compliance with this requirement and/or the project specifications shall be repaired or removed and replaced as directed by Whiting-Turner and/or the Owner, at no additional cost to Whiting-Turner and/or the Owner.

z.  All contractor personnel are required to check in/out each day with the Whiting-Turner Superintendent. Under no circumstances shall work be scheduled or performed without Whiting-Turner personnel being notified and present onsite.

aa. Each week Whiting-Turner will conduct a Weekly Progress Meeting. The purpose of the meeting will be as follows: to review the project progress to date, to outline and discuss upcoming scheduled work activities, to coordinate subcontractor work activities, to discuss project safety & quality, and to address any other matters affecting the project or the project team. It is mandatory that a company representative, who is familiar with the on-going project activities of this contract, represent each subcontractor at the meeting. This representative must also be authorized to speak for the contractor and to make binding commitments on its behalf.

bb. Temporary lighting, power & water as required for this work beyond that provided by mechanical and electrical contractors per specifications. Temporary lighting, power, and water will be provided once the permanent supply

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

and distribution system has been installed. Until such time, the contractor is responsible for temporary measures required to perform their work.

    cc. Adhere to the following provisions:
        1)  The maximum sized motor to be used by any subcontractor at any 120V receptacle shall be limited to 1HP.
        2)  Provisions for electric welders shall be the responsibility of this subcontractor.
        3)  Where the contractor requires special electrical service characteristics not addressed above; this subcontractor shall provide such services at his own expense.

    dd. In the event of any discrepancy between contract documents and governing code/regulations/standards, the more stringent shall apply.

    ee. Insurance per W-T standard subcontract and Owner contract (see Exhibit C)

    ff. Professional liability insurance for any design/engineering work.

    gg. Performance & Payment Bonds per Whiting-Turner Standard Forms.

2. **Project Records / Documents**
    a.  Shop drawings, submittals and mock-ups as specified. Ten (10) copies of all submittals, literature, and operation maintenance data. One (1) reproducible and three (3) sets of prints for shop drawings.

    b.  Provision of the contract document required submittals within 10 days of award. Failure to provide complete submittal data will result in 0.1% penalty per day, maximum 10% of contract value.

    c.  As-built drawings, O&M Manuals, commissioning tests and all other required closeout documentation

    d.  Reproduction costs for contract documents and shop drawings.

    e.  Engineering calculations/PE certifications as specified.

    f.  Professional liability insurance for any design/engineering work..

    g.  Performance & Payment Bonds, if required, per Whiting-Turner Standard Forms.

    h.  MSDS sheets for all materials must be submitted with the submittals and prior to start of this work. Submittal to contain at a minimum the MSDS#, chemical name, chemical manufacturer, manufacturer address, entry routes, and first air procedures. Additional information may be required. Should a subcontractor wish to use a product not listed, a chemical request form must be submitted. The approval process may take 2 to 4 weeks. Under no circumstances will a non-approved chemical be brought onsite.

    i.  All punchlist work and project closeout documentation shall be completed and approved by the Owner and Architect by the "Date of Final Completion" which shall be no later than 14 days after the Date of Material Completion. Any uncompleted punchlist items after this date will be completed by Whiting-Turner and these costs will be backcharged to the appropriate contractor or vendor.

    j.  Warrantees as specified commencing on date of material completion.

    k.  Prepare and maintain a material status report for all material to be used on the project. The report shall include material item, supplier, purchase order number, telephone number, and a schedule for shop drawings, fabrication, and deliveries. Whiting-Turner reserves the right to check directly with suppliers on all items that are critical to the project schedule. This report is to be submitted with your monthly invoice as a condition of payment.

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2

THE WHITING-TURNER CONTRACTING COMPANY
Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

l.   This contractor shall maintain a current set of As-Built drawings during the course of the work. This contractor shall have these drawings available upon request for review by the A/E and Whiting-Turner. Whiting-Turner reserves the right to withhold subcontractor monthly payment based on insufficiently updated As-Built records. Upon completion of the work, a field generated red line set of As-Built drawings, two photocopies of the same, and updated CAD drawings shall be submitted to Whiting-Turner.

m.   Submit daily work reports indicating number of workers by classification, hours worked, and construction progress information on the preprinted form found in the Supplemental Conditions to the Contract. Additional forms are available from Whiting-Turner superintendents during course of work.

3.   Housekeeping
a.   Daily and final cleanup including mud and dirt tracked onto public walks, lots and roads. Good housekeeping is essential to the safe and efficient construction of the job and is the responsibility of each foreman and his crew. Work areas, stairways, walkways, storage rooms, and other areas shall be kept clean of obstructions, paper, scrap, pipe, lumber, welding rods, rags, and other debris at all times. More than daily removal may be necessary to maintain a safe work area. Failure to pursue this work shall result in backcharges. The Whiting-Turner Superintendent shall determine what constitutes a safe work area.

b.   Removal offsite all trash, debris and spoils generated by this work unless noted otherwise. Whiting-Turner will provide dumpsters and trash chutes if necessary for interior fit-out work only.

c.   The contractor is responsible for keeping public streets clean, free of dirt and debris, and functional at all times. If the contractor is found to be in noncompliance, the contractor will be backcharged for the cost of having the street cleaned.

d.   Contractors will treat onsite-paved streets as public streets, and will be responsible for keeping them clean, free of dirt and debris, and functional at all times. If contractor is found to be in noncompliance, said contractor will be backcharged for the cost of having the street cleaned.

e.   All building pad grading has been completed to finish floor elevation. This additional material will remain until just before the slab on grade is poured to protect the sub-base from construction activity and weather. Contractors are responsible for repairing any damage caused by their work and returning the building pad to its original condition.

f.   Construction personnel and all deliveries shall use Gates, as determined by Whiting-Turner, for access to the project unless otherwise directed by Whiting-Turner.

g.   Smoking is not permitted in Georgia Tech buildings or construction areas. Georgia Tech and Whiting-Turner will designate a limited number of smoking areas.

4.   Coordination
a.   Normal working hours for this project shall be as established by Whiting-Turner. (Working other hours will require authorization by Whiting-Turner).

b.   Special provisions to minimize disruption to existing facilities operations (if applicable).
1)   Any work that will disrupt facilities operations generally must be performed during off hours; this includes:
• All utility outages
• Operations disrupting access/egress at entrances.
• Operations creating a safety hazard to the public.
2)   Arrangements must be made in advance with the Project Superintendent for access to work within existing facilities.

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

3) Access to existing facilities must be maintained at all times. Provide necessary temporary measures and/or phase work to insure access requirements are maintained.

4) Coordinate and phase site work to maintain traffic into and around the site and to provide for maximum parking capacity during construction per Owner requirements.

5) Availability of space within the site for storage of material/equipment will be limited. All contractors must closely coordinate deliveries with the Project Superintendent.

c. Premium costs for shutdowns or any other off-hour work. All shutdowns must be scheduled at least one (1) week in advance.

d. The contractor understands that this is a fast track project, and during the execution of work covered by this contract the site will be congested by many other trades. The bidder should assume that each item of work might not be done in one continuous operation.

e. Use of site for staging, storage trailers, parking, smoking, lunch, etc. shall be as instructed and approved by Whiting-Turner.

f. This contractor's employees will attend a mandatory site safety orientation prior to beginning any work.

g. Parking on site streets is not permitted. On-site parking is not allowed. Parking costs are the sole responsibility of trade contractors.

h. The use of a freight elevator, hoist, or crane must be coordinated with WT.

i. Phasing and remobilizations per the project schedule and as required to properly coordinate and complete the work.

j. Any contractor who wishes to fabricate materials in a building shall coordinate and obtain approval through Whiting-Turner.

5. **Project Costs / Penalties**

a. Invoices: Pencil copy is due no later then the 20th of the month. (Faxed copies acceptable). Final, notarized original copies, with releases of lien, are due no later than the 25th - no fax copies. Note: Must be on W-T forms. See supplement conditions.

b. Owner shall not pay for materials stored offsite.

c. The contractor shall submit pricing for changes within five (5) days of receipt of change request, unless mutually agreed otherwise. All pricing must be accompanied by a detailed breakdown of the costs. Lump sum pricing will not be accepted. Non-response within the required time frame will be considered as the contractor's agreement to accept Whiting-Turner's assigned value for the change.

d. Tickets for extra work will not be considered unless a work order has been previously issued to the contractor, signed by an authorized Whiting-Turner representative, which authorizes the work to be completed. Then the tickets must be submitted and backed up by a written summary of all associated costs within five (5) days of the performance of such work.

e. The Contractor agrees to participate in the Whiting-Turner recycling program. The Contractor is to dispose of all material such as structural steel, metals, wood, paper, etc. into the appropriate container as designated by the Project

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/20...

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

Superintendent. Failure to do so will result in a fine of $200.00 per occurrence that will be deducted from your contract. If materials are not put into the appropriate container the contractor will be responsible for the cost of the disposal and haul-off of the container.

f.   In the event of any discrepancy between contract documents and governing code/regulations/standards, the more stringent shall apply.

6.   **Quality / Safety**

a.   Comply with all Whiting-Turner Safety and Quality Control Program requirements for this work. (See Supplemental Conditions for Complete Programs)

b.   This contractor shall conduct weekly safety meetings for all its employees. A Whiting-Turner superintendent and/or safety officer may attend this safety meeting. The Contractor must provide legible sign-in sheet and a meeting agenda to the Whiting-Turner field office by the end of that day.

c.   Whiting-Turner shall conduct bimonthly safety and quality control meetings at the job site. All employees working on the job site shall attend these meetings.

d.   Contractors, subcontractors and their employees are required to participate in a one-time safety training orientation session prior to commencing with any work on site. This safety training session will be held as needed at 7:30 A.M. in the Whiting-Turner field trailer. The safety training is approximately 2 hours.

e.   Contractors must submit to Whiting-Turner a written safety program for their company-wide safety policy 10 days prior to starting work. This written program is subject to review and comment by the Whiting-Turner safety department. The program will be kept in the Whiting-Turner field office during course of the work and shall contain all training records and certifications for this subcontractor's employees. The Contractor shall periodically update the records with submittals to Whiting-Turner as new employees arrive or current employees are trained.

f.   This Contractor shall be responsible to post any applicable signage to warn workers and others of potential hazards due to the work.

g.   Additional safety clarifications: (a) Audible-warning devices must be installed on all forklifts, scissor lifts, man lifts and articulated platforms used on this project work site. Audible devices must activate on any movement and upon descent of platform. (b) All safety equipment, such as lights, horn, etc., must be operational at all times. Forklift or moving equipment operators are required to wear seat belts. (c) Full body harness with lanyard is required for personnel within scissor lifts or articulated platforms. The tie-in point is a dedicated attachment point or as directed by the manufacturer.

h.   As required for the work, this contractor shall be responsible to cover and/or barricade any roof openings, floor openings, wall openings, excavations, or other fall hazards that are created by performing the work. All floor openings, 2' square or smaller, must be covered by a minimum of 3/4" plywood. Openings larger than 2' will require additional layers or other covering methods as determined by the subcontractor and approved by Whiting-Turner. All coverings shall be fastened securely and have a Whiting-Turner provided "Do Not Remove" sign. No coverings shall be removed without approval from Whiting-Turner. All barricades and railings must meet W-T and OSHA requirements.

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2000

T 14

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

i. This Contractor shall coordinate performance of this contract work with that of other subcontractors, independent testing and inspection agencies and as directed by Whiting-Turner. This contractor is responsible for providing any and all notices to Federal, State and Local authorities, such as building departments, environmental agencies, etc., for any inspections that may be required by such authorities. If such inspections are required and the necessary notifications were not given, this contractor is responsible for both all costs required to remedy the situation, including removal and replacement of work, if so directed, and all impacts to the project schedule. All inspections shall be coordinated with Whiting-Turner.

Initialed By:

Construction Manager _____

Contractor _____

C-015
12/05/2[0]

THE WHITING-TURNER CONTRACTING COMPANY

Trade Contract 11000-01
Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

### B. SPECIFIC SCOPE

The Specific Scope of Work Items –Abatement and demolition of the Neely Building and the Electronics Research Building as well as site demolition in accordance with the drawings and specifications contained herein as well as all regulations set forth by OSHA, the EPA and any and all regulatory agencies having jurisdiction for the state of Georgia regarding hazardous materials.

This work shall include all labor, supervision, material, tools, equipment, shop drawings, submittals, transportation, taxes, permits, engineering, support functions, insurance, bonds, proper disposal of hazardous materials and any other items or services necessary for and reasonably incidental to the proper execution and completion of the work, in accordance with all drawings, specifications, state regulations, addenda, general conditions, requirements, and other related documents as indicated herein. The scope of work shall include but not be limited to the following:

## 1. Neely Reactor Building
*NOTE: This General Contract is for any and all items included in the Reactor Building Drawings and Specifications. Any and all duplications between the Neely Reactor Drawings prepared by Richard and Wittischiebe and the Nanotechnology Research Center Drawing prepared by M+W Zander will be the responsibility of this contractor.*

### A. Requirements – Neely Building
1.)    Applicable specification sections:
This work primarily includes but is not limited to the following specification sections as well as related work specified or shown elsewhere in the contract documents:
  i.) Nanotechnology Research Center Building Project Specifications Dated December 16, 2005
  ii.) Neely Reactor Containment Building Abatement and Demolition Package dated I
  iii.) Abatement Mock Up Neely Nuclear Research Center's Containment Building
  iv.) Project Update Neely Nuclear Research Center's Containment Building Abatem
    Containing Materials Field Verification
  v.) Combined Environmental Site Assessment and Georgia Environmental Policy A
    Neely Nuclear Research Center Revision 1, dated February 10, 2005.
  vi.) Final Geotechnical Engineering Report Nanotechnology Research Center Buildi
    Institute of Technology

### Abatement and Other Construction  ϒᵦ₁ ϒᴚ ϾῬ
1.  This contract includes the complete abatement of any and all hazardous materials including lead, asbestos, mercury, PCB, etc.
2.  This contractor is to submit a copy of their lead and asbestos program with their bid.
3.  Submit component safety plan and documentation for personnel showing they have been trained.
4.  Abatement contractor is responsible for training of Whiting Turner personnel and providing Whiting Turner personnel with any and all protective clothing, respirators, etc. for purposes of entering the work area for observation and supervision.  Provide two (2) powered air purified respirators for Whiting-Turner supervision personnel.
5.  This contractor is to include two (2) medical examinations for Whiting-Turner personnel.  One to be conducted prior to the start of abatement and one to be conducted at the completion of the abatement.  Provide unit costs for medical examinations.
6.  Provide two (2) radios for exclusive use of whiting-Turner personnel.  One to be used in the containment area and one to be located in the Whiting-Turner trailer.
7.  Include both hot water and cold water for decontamination as well as proper disposal of contaminates.

Initialed By:

Construction Manager _____

Contractor _____

G-01½    No. 8382    P. 9/10

Feb. 1. 2007  1:58PM    Jackie's Transport Inc.