# EXHIBIT 1

# TRADE CONTRACT

## THE WHITING-TURNER CONTRACTING COMPANY

## CONSTRUCTION MANAGER

Demo/Abatement of: Neely Reactor, Electronics Research Building and Site

| | |
|---|---|
| TRADE CONTRACT NO: | 11000-01 |
| CONSTRUCTION MANAGER: | THE WHITING-TURNER CONTRACTING COMPANY<br>One Lake Side Commons<br>990 Hammond Drive<br>Atlanta, Georgia 30328 |
| CONTRACTOR:<br>Address: | TolTest<br>1480 Ford St.<br>Maumee, OH 43537 |
| Remittance Address: | 1480 Ford St.<br>Maumee, OH 43537 |
| PROJECT: | Georgia Tech Nanotechnology Research Center |
| OWNER: | GSFIC<br>270 Washington St 2nd Floor<br>Atlanta, GA 30334 |
| ARCHITECT: | M+W Zander U.S. Operations, Inc.<br>549 W. Randolph St.<br>Chicago, IL 60661 |
| DATE OF THIS AGREEMENT: | February 16, 2006 |

THIS CONTRACT INCLUDES PAGES: T1 through T35, T35-1 through T35-5, T36 through T39, T39-1, T40, T40-1 through T40-4, T41 through T68 67 *RS* 4/11/06

| | |
|---|---|
| ADDRESS REPLY TO: | THE WHITING-TURNER CONTRACTING COMPANY<br>One Lakeside Commons<br>990 Hammond Drive<br>Atlanta, Georgia 30328 |
| | Attn: Ryan Smith |

RECEIVED APR 1 7 2006

# TRADE CONTRACT
## THE WHITING-TURNER CONTRACTING COMPANY
## CONSTRUCTION MANAGER

This Agreement, made as of the date above written by and between the Contractor and The Whiting-Turner Contracting Company, of Baltimore, Maryland, a body corporate of the State of Maryland, hereinafter called the Construction Manager.

The Contractor and the Construction Manager, for the consideration hereinafter set forth, agree as follows:

## ARTICLE 1. DEFINITIONS

As used in this Agreement, unless a different meaning clearly appears from the context:

"Architect" or "Engineer" means the person or firm above named as Architect or any other person, firm, or corporation retained by the Owner to provide engineering and/or design services for the Project.

"Construction Manager" means The Whiting-Turner Contracting Company, retained by agreement with Owner to provide construction management services.

"Owner" means the person or entity above named as Owner.

"Day" means calendar day unless otherwise specifically designated.

"Project" means the Project identified above and is sometimes used interchangeably with the "Work"

"Work" means the total construction to be performed hereunder.

Contract Documents: The contract documents (the "Contract Documents") consist of this Agreement, Conditions of the Contract (General, Special, Supplementary and other Conditions), drawings (the "Drawings"), general and special specifications (the "Specifications"), all Exhibits, Schedules, Bulletins, and Addenda relating to any of the foregoing issued prior to the execution of this Agreement and all Modifications issued subsequent thereto. All of the above shall form the Contract (the "Contract") between the parties hereto and all are as fully a part of this Agreement as if attached hereto or fully set forth herein. A schedule of all the Contract Documents is set forth in *Exhibit "A."*

Certain other words, terms and phrases used in this Agreement shall have the meanings given to them by the Contract Documents.

## ARTICLE 2. SCOPE OF WORK

The work is to be performed and materials to be furnished by the Contractor are set forth in *Exhibit B*.

## ARTICLE 3. PROVISION OF LABOR AND MATERIALS

(a) Contractor agrees to furnish and pay for all labor and supervision (said labor and supervision to be limited strictly to persons who will work in reasonable harmony with other persons on the Project and who are reasonably satisfactory to Owner and Construction Manager), tools, apparatus, supplies, equipment and services, and also to furnish, deliver, install and pay for all materials necessary for the performance and completion of the Work described in *Exhibit B*, "Scope of Work," free from all claims of laborers, material suppliers, subcontractors, and all others making claims through the Contractor. At all times that Contractor has personnel at the Project site, it shall also have present an authorized representative of Contractor who shall supervise and direct Contractor's personnel and be responsible for their actions. Such representative shall be authorized to act on behalf of the Contractor and communications to such representative shall be binding upon Contractor.

All services required hereunder shall be performed to the reasonable satisfaction of Owner, Architect and Construction Manager, in strict accordance with the Contract Documents. Contractor shall perform hereunder at the direction of Construction Manager. Contractor warrants and represents that it is expert and experienced in the kind of work to be performed under this Agreement.

(b) In the event that any deviations from the Contract Documents are incorporated in any shop drawings of or by Contractor, such deviations and the reasons therefor shall be fully explained in writing to Construction Manager and Architect at the time such shop drawings are submitted and failure to so specify and explain any such deviation shall automatically void any inadvertent approval of the same by Construction Manager or Architect.

(c) Contractor agrees to adhere strictly to the requirements of the Contract Documents unless, prior to the beginning of its work, Contractor formally objects in writing to certain specific items or apparent discrepancies as being inadequate or unsuitable to accomplish the desired results, and Construction Manager and Architect have specifically agreed to a remedial solution in writing.

Contractor agrees to cooperate in carrying out Construction Manager's quality assurance program including, but not limited to, furnishing necessary documentation and facilitating inspections and quality checks.

## ARTICLE 4. DILIGENT AND TIMELY PERFORMANCE

(a) Contractor agrees to commence, pursue and complete the Work diligently, in such sequence and according to such schedule as Construction Manager shall establish from time to time during the course of the Work, and to perform the Work so as not to delay any other trades or contractors, time being of the essence of this Contract. Any written dates furnished by Contractor and approved by Construction Manager for delivery of materials, samples, shop drawings, etc., shall become part of this Contract. Contractor shall immediately notify Construction Manager in writing of any interruption on the job or late delivery which causes or may cause a delay in Contractor's performance. No extension of the completion date shall be permitted unless approved in writing by the Construction Manager, and Contractor shall be responsible for any losses or penalties incurred as a result of delays in completing its work. Contractor shall work overtime or shift work if deemed necessary, in the judgment of the Construction Manager, to maintain the progress of the work. Any such overtime or shift work required to maintain progress or to complete the work on a timely basis shall be at Contractor's expense and shall not be charged to Construction Manager unless specifically authorized in writing by the Construction Manager prior to the commencement of such overtime or shift work.
C-015
12/05/2000                              T 2                    Initialed by:
                                                               Construction Manager: _____ Contractor: _____

(b) Construction Manager shall have the right at any time to delay or suspend the work or any part thereof without incurring liability therefor. An extension of time shall be the sole and exclusive remedy of Contractor for any such delays or suspensions, but only to the extent that a time extension is obtained from the Owner. In the event that Construction Manager obtains additional compensation from the Owner or others for delay or interference, Contractor shall be entitled to share pro rata in such additional compensation, as determined in the good faith judgment of the Construction Manager.

(c) Contractor shall cooperate fully with Construction Manager in providing any information requested by Construction Manager to prepare schedules for the Project, including, but not limited to, detailed information concerning the sequence and beginning and ending dates of activities, costs related to such activities, and any information requested for Critical Path Method scheduling if used for the Project. The costs of all such activities on the part of Contractor are included in the Contract Amount.

(d) In the event of any dispute under this Contract or as to the work to be performed, Contractor shall continue to diligently perform the work as directed by the Construction Manager without interruption deficiency or delay.

## ARTICLE 5. PAYMENT

(a) Payment of the Contract Amount shall be in monthly installments. Construction Manager shall pay to the Contractor an amount equal to ninety percent (90%) of the value of the work performed by Contractor during the month to which each application for progress payment relates. Construction Manager will request Owner and its lender to agree that no further retainage shall be deducted from applications for progress payment after fifty percent (50%) of the Contract Amount has been paid, but Contractor shall not be entitled to such lesser retainage in the absence of such agreement or in the event, in Construction Manager's judgement, Contractor's performance is in any manner unsatisfactory. Payment shall be made only for work performed by Contractor in accordance with the Contract Documents as determined by Architect and reviewed and recommended by Construction Manager and not later than fifteen (15) days after payment therefor has been received by Construction Manager from Owner, or within such shorter period specified by applicable law, statute, or regulation. Contractor shall not be entitled to payment in the event Owner withholds payment for work which is responsibility of Contractor. The dates for submission of monthly applications and dates of monthly payment shall be communicated to Contractor by Construction Manager promptly after such dates are established with Owner and its lender.

(b) Retainage and any other unpaid balance of the Contract Amount shall be payable within fifteen (15) days, (or within such shorter period specified by applicable law, statute, or regulation), after the work under this Agreement has been completed and accepted by Owner, Architect and Construction Manager and following approval by the Architect of the final application for payment, and settlement of all claims, if any, under this Agreement, provided that Contractor has fully performed all of its obligations hereunder.

(c) Contractor agrees to submit to Construction Manager its monthly application for payment promptly on the date established by Construction Manager, so as to enable Construction Manager to forward the application to Owner for payment. As a condition precedent to the payment of any application, Construction Manager may require the Contractor to (1) produce waivers of mechanics lien rights, in form and substance satisfactory to Construction Manager, executed by Contractor and all persons or entities supplying labor or materials to Contractor through the date of application, or (2) provide such other evidence as the Construction Manager may require that all charges for labor and material have been paid. Construction Manager reserves the right to inquire of Contractor's suppliers and subcontractors, directly or indirectly, to determine the current status of indebtedness and may, at Construction Manager's discretion, make checks payable either jointly to Contractor and the supplier or subcontractor, or directly to the supplier or subcontractor for the account of Contractor.

(d) Payment by Construction Manager to Contractor, for its account, shall not be deemed to be an admission or approval by Construction Manager that the work covered by such payment is in conformance with the requirements of this Agreement or the Contract Documents.

(e) Notwithstanding any other provisions of this Agreement, Construction Manager shall be under no obligation to make payment to the Contractor under any provision hereof except to the extent that Construction Manager has received funds from Owner, payment by Owner being a condition precedent to payment of the Contractor.

(f) Construction Manager may apply any payments otherwise due Contractor hereunder to any other indebtedness, liability or obligation of Contractor to Construction Manager whether under this Agreement or any other agreement or circumstance.

## ARTICLE 6. CHANGES IN THE WORK

(a) A Change Order is a written direction to Contractor, signed by Construction Manager and any other persons required under the Contract Documents, issued after execution of this Agreement, directing or authorizing additional work or deletion of work and specifying, if applicable, any change in the Contract Amount or Schedule. Contractor agrees to perform such changed or additional work within its trade and related to its Scope of Work upon request of Construction Manager. Construction Manager may initiate Change Orders for itself, at the request of Owner or the Architect, or at the request of Contractor as hereinafter set forth. A Change Order or request by Contractor for a Change Order shall be in writing and in the form specified by Construction Manager.

(b) In the event that Construction Manager directs Contractor to perform extra work, additional work or changed work, Contractor agrees that it will promptly perform and diligently complete such work whether or not Construction Manager and Contractor have agreed on the cost of such work. Contractor shall submit to Construction Manager a lump sum or guaranteed maximum price proposal for such work, which proposal shall include a detailed cost breakdown for each component of the work, indicating both quantities and unit prices, and such proposal shall be submitted to Construction Manager not later than 10 days after such proposal is requested by Construction Manager. If a lump sum price, guaranteed maximum price, or unit price for the extra work cannot be agreed upon, Contractor agrees to do the work on the basis of its actual cost, plus percentage fees for overhead and profit as specified herein. Contractor shall not commence additional work unless such work is first expressly authorized by the Construction Manager in writing.

(c) In the event that Contractor performs any such authorized additional work on an actual cost plus basis, it shall furnish each day to Construction Manager, duplicate time sheets, material tickets, and a statement of all other charges, securing on each thereof the signature of Construction Manager. Copies of all such signed copies of time sheets, material tickets and statements shall accompany Contractor's application for payment.

(d) Should Construction Manager require the Contractor to omit any work required under this Agreement, Contractor agrees to omit such work, and Construction Manager will deduct from any monies due the Contractor the value of such omitted work, including overhead and profit attributable to such work.

(e) In the event of any dispute, controversy, or claim for additional compensation or time extensions, notice in writing shall be given to the Construction Manager no later than seven (7) days following the occurrence on which claim is based. Such notice shall describe the dispute, controversy or claim in detail so as to allow Construction Manager to review its merits. Any claim not presented within such time period shall be deemed waived by Contractor. Promptly thereafter, Contractor shall provide detailed information to substantiate such claim including supporting documentation and calculations, and including any information requested by Construction Manager.

(f) If the Contractor shall make any claim against the Construction Manager for extra work or additional compensation for which the Owner or its agents may be liable, the Construction Manager may present such claim or claims to the Architect and/or Owner for determination and decision provided (1) such claim is not, in the judgment of the Construction Manager, made in bad faith, (2) Contractor has given notice as set forth above and in the form required by the Owner-Construction Management Agreement, and has presented the claim to Construction Manager in sufficient time for Construction Manager to review the claim in advance and present it to the Owner within the time required by the Owner-Construction Management Agreement and, (3) Contractor has both requested in writing that Construction Manager present the claim and has agreed in writing, on terms satisfactory to Construction Manager, to pay all costs of Construction Manager in presenting and pursuing such claim. Presentation of the claim by Construction Manager shall not be construed as an acknowledgment of the validity thereof, or a waiver of any right of the Construction Manager, and such action shall be without prejudice to its rights. The decision of the Architect and/or Owner shall be final and binding upon the Contractor to the same extent and purpose that it is final and binding on the Construction Manager.

(g) Construction Manager assumes no responsibility for material received, unloaded or stored for or by the Contractor. Materials, tools, supplies, equipment, or other property belonging or leased to Contractor are its responsibility, and no claim for missing, stolen or damaged property shall be made against Construction Manager or Owner. No additional compensation will be allowed Contractor for difficulties or inconveniences arising from mud, dust, water, ice, snow, wind, heat, cold, or other weather, natural or physical conditions.

(h) Construction Manager shall not be required to provide hoisting facilities or temporary power, water or heat unless otherwise specifically provided in the Contract Documents.

(i) Contractor agrees that in the event it performs additional or changed work on a cost plus basis, the percentage fees for combined overhead and profit set forth in Article 10 hereof shall apply.

(j) In the event Construction Manager directs Contractor to work overtime or premium time for which Construction Manager is obligated hereunder to reimburse the Contractor, Contractor shall be reimbursed only for the difference between regular time and overtime for direct payroll cost and the related payroll taxes, insurance, and benefits, and shall not be entitled to any additional compensation for overhead or profit or for the inefficiencies or declines in productivity. Nothing herein shall be construed to obligate Construction Manager to pay for any overtime work it has not approved in writing or for any overtime work caused by failure of Contractor to provide sufficient manpower or otherwise maintain the progress of the work.

## ARTICLE 7. DEFAULT

(a) In the event Contractor (1) becomes insolvent, or files or has filed against it any Petition in Bankruptcy, or makes an assignment for the benefit of creditors, or commences or has commenced against it or enters into any other proceeding or arrangement for relief of debtors, reorganization or deferral or discharge of debts, or (2) fails to pay, when due, wages or costs of labor, including benefits and taxes, or for materials, supplies, or other items purchased or used in connection with this Agreement, or (3) fails to pursue the Work in accordance with the requirements of the Contract Documents, the directions of Construction Manager or the schedules established by the Construction Manager, or (4) fails to supply a sufficient number of properly skilled supervisors, workers, materials, tools, equipment, or supplies of the proper quality, including failure occasioned by boycott, labor dispute or other cessation of work by Contractor's employees, or (5) interferes with or disrupts, or threatens to interfere or disrupt, the operation of Construction Manager, Owner or any other contractor, laborer, material supplier, subcontractor, or other person working on the Project, whether by reason of any boycott or labor dispute or any other reason, or (6) commits any other breach of this Agreement, Contractor shall be in default under this Agreement. In the event that such default continues for two (2) days after written notice thereof by Construction Manager to Contractor, or immediately in the event that such default, in the judgement of the Construction Manager, cannot be cured within a two (2) day period after notice of default, Construction Manager may without further notice terminate this Agreement, take possession of all of Contractor's materials, supplies, and equipment on the Project site, in storage or in transit, and may make arrangements for completion of the Work. The cost of completion, as well as any other costs, damages or expenses, including the Construction Manager's legal fees and expenses, incurred as a result of such default, shall be charged against any unpaid balance due to the Contractor; and if such total costs, damages and expenses exceed the balance due, Contractor agrees to pay the amount of said excess upon demand by Construction Manager. Contractor's materials and supplies may be incorporated and used in completing the Work. With respect to any items incorporated or consumed in the Work and for which Contractor has not previously been paid, the net reasonable value of the same, being the lower of Contractor's cost or fair market value as of the date Construction Manager took possession of such items, shall be credited against the aforesaid total completion costs, damages and expenses.

(b) In addition to, and not in substitution of the remedies hereinabove specified, Construction Manager may immediately, in the event of default or failure of Contractor to perform its obligations hereunder, provide or arrange for the provision of such workmen and materials necessary to continue and complete the work contracted for hereunder, for the account of the Contractor and at Contractor's expense and apply any and all funds which may be or become due Contractor to such expense, all without terminating, rescinding, or voiding this Agreement or releasing the Contractor from any obligation or liability hereunder, or from any damages caused by Contractor's failure to perform.

(c) Notwithstanding any other provisions of this Agreement, in the event of default by Contractor, Construction Manager shall have the right to pursue any and all remedies provided herein or provided by law, in equity or otherwise, including, specifically, the right to

apply monies otherwise due Contractor from Construction Manager, under this Agreement or any other agreement or circumstance, to the costs of curing such default or the damages therefrom.

(d) In the event the Construction Manager does not terminate this Contract, but assents to delayed completion of the work by the Contractor, such assent shall not be construed as a waiver of the Contractor's obligation to reimburse the Construction Manager for any costs, damages, or expenses incurred as a result of such delay; and all such costs, damages, and expenses shall be paid and reimbursed to Construction Manager upon demand.

(e) In the event that Construction Manager wrongfully exercises any of its rights under this Article 7, Contractor's sole and exclusive remedy shall be payment of the Contract Amount or the portion of the Contract preformed by the Contractor.

## ARTICLE 8. WAIVER OF LIENS

Contractor agrees to execute such specific releases and/or waivers of liens as may be requested by Construction Manager. Contractor shall promptly apply all payments made hereunder to Contractor's cost for labor and material for the Project and shall further take any and all necessary actions to keep the Project free and clear of all claims for liens. In the event that any person furnishing labor or materials to the Contractor files a notice of intent to place a lien on the Project, Contractor shall promptly take all necessary steps to have such notice withdrawn, including, if requested by Construction Manager, the posting of a bond. In the event that Contractor does not fulfill its obligations under Article 8, Construction Manager may take all actions which it deems reasonable or necessary to protect the Project from liens and the costs of any such actions including attorney's fees, shall be deducted from amounts payable by Construction Manager to Contractor under this Agreement or any other agreement or circumstance. Contractor shall remain liable in the event that monies payable to it are insufficient to pay any damages or expenses arising from such liens.

## ARTICLE 9. MISCELLANEOUS

(a) Contractor shall not assign this Agreement or any part hereof, or subcontract any work hereunder, without the prior written consent of Construction Manager. Construction Manager may assign this Agreement, and all of its rights hereunder, to Owner, to a lender in connection with Owner's financing, or to other persons or entities as deemed necessary by Construction Manager.

(b) Contractor's bid or proposal was accepted, and this Contract was awarded, on the condition that this form of Contract would be executed, without change or alteration, by Contractor and on the condition that Contractor would commence performance of the work on the date established by Construction Manager. Commencement of performance of the work described herein shall constitute Contractor's agreement to each and every term hereof irrespective of whether this Contract is executed by Contractor.

(c) Owner and Construction Manager have the right to enter into other contracts in connection with the Project, and the Contractor shall cooperate with any such other contractors. Contractor shall be liable for delay, or damage to the Project or property or any other contractor on the Project. Should such other contractor make claim against Owner, Architect or Construction Manager on account of such damage or delay, Contractor agrees that it will hold Owner, Architect and Construction Manager harmless against any damages, awards, settlements or expenses arising out of such claim, including attorney's fees. The Construction Manager shall be responsible to the Contractor for physical damage to Contractor's work only if such damage is directly and proximately caused by the negligence of the Construction Manager.

(d) Contractor agrees to clean up daily and to remove all dirt, trash and debris arising from its operations as directed by Construction Manager. In the event Contractor fails to clean up and remove such dirt, trash and debris, Construction Manager may, at its discretion, arrange for the same at Contractor's expense.

(e) Contractor agrees to indemnify and hold harmless Construction Manager, Architect and Owner, their officers, directors, agents and employees, from and against any and all claims, suits, liens, judgement, damages, losses, and expenses, including, but not limited to attorney's fees, arising in whole or in part and in any manner from the acts or omissions of the Contractor, its officers, directors, agents, employees or subcontractors, in connection with the performance of this Agreement. Contractor shall defend and bear all costs of defending any actions or proceedings brought against the Construction Manager, Architect, or Owner, their officers, directors, agents and employees, arising in whole or in part out of any such acts or omissions, provided, however, that Construction Manager shall have the right to approve selection of counsel to conduct such defense.

(f) Contractor shall have no greater or different rights or remedies against Construction Manager with respect to any matter, including, but not limited to additional compensation or time, than Construction Manager has against Owner pursuant to the Contract Documents. Within its scope of Work, Contractor "stands in the shoes" of Construction Manager and assumes all obligations, duties and responsibility by which Construction Manager is bound to Owner pursuant to the Contract Documents. Owner shall have all rights and remedies against Contractor which Owner has against Construction Manager pursuant to Contract Documents.

(g) Contractor acknowledges that, before executing this Agreement, it has carefully examined this Agreement, the Contract Documents and the Project site, has made such investigation of the Work required to be done and the material required to be furnished and, based upon such examination and investigation, Contractor represents that it fully understands and can perform all requirements of the Contract Documents.

(h) Construction Manager shall have the right to terminate this Agreement in the event that the Agreement between Owner and Construction Manager is terminated for any reason. In the event of such termination, Contractor's sole right and Construction Manager's sole obligation to Contractor shall be payment for the Work completed by Contractor to the extent that Construction Manager can recover such payment from Owner, less any amounts due to Construction Manager by Contractor. As a condition of such payment, Contractor shall furnish Construction Manager with a release, satisfactory in form and substance to Construction Manager, of all claims against the Construction Manager and Owner.

(i) Contractor agrees to clearly note on each payment check to and related invoice of its subcontractors and material suppliers which exceeds Five Hundred Dollars ($500.00), as being for work or materials provided pursuant to this Agreement for this Project, by name, all to be subject to Construction Manager's inspection upon request. Contractor also agrees to submit promptly to Construction Manager, upon request, the name, address and telephone number of each subcontractor or supplier of any tier, to Contractor for labor, materials, or equipment used on this Project.



(j) Contractor shall promptly correct any Work done by it or by its subcontractors which is discovered during the course of the Work to be not in conformance with the requirements of the Contract Documents, and shall promptly remedy any defects in the Work done by it or by its subcontractor due to faulty materials, equipment or workmanship which appear within a period of one (1) year from the date of substantial completion of this Agreement or within a longer period of time as prescribed by law or by the terms of any other applicable warrantee or guarantee required by the Contract Documents. Such corrections and remedies of defects shall be without cost to Construction Manager and shall be corrected and remedied to the reasonable satisfaction of the Architect, Construction Manager and Owner.

(k) All Work performed under this Agreement shall be in strict conformity with all applicable laws, codes, ordinances, rules, regulations and requirements of Federal, State, City and Municipal authorities, of the National Board of Fire Underwriters, any local Fire Underwriters and any local fire insurance exchange requirements in effect at the date of this Agreement. Should Contractor incur additional costs because of any future change in such requirements, additional compensation therefore will be payable only upon the approval of the Architect, Owner, and Construction Manager. If Contractor performs any work contrary to such laws, codes, ordinances, rules, regulations or requirements, it shall bear all costs arising or resulting therefrom, including the costs incurred by Owner or Construction Manager.

(l) Contractor shall be represented on the Project site during the course of its Work by a sufficient number of qualified, full-time supervisors acceptable to Construction Manager. Contractor shall enforce discipline and good order among its employees, suppliers, and subcontractors. Construction Manager may require Contractor to remove from the Project any such employees, suppliers, or subcontractors or others that Construction Manager may reasonably deem incompetent, disruptive or a hindrance to progress of the Project, whereupon any such employee, supplier or subcontractor shall be so removed and shall not again be employed on any part of the Project without written consent of Construction Manager.

(m) Construction Manager shall have the right to require, at any or all progress meetings, whether called by Owner, Construction Manager or others, the presence of Contractor, or a representative of Contractor authorized to act on its behalf.

(n) The Contractor agrees that it will not engage in discriminatory employment practices in violation of any Federal, State, or local law including any order or regulation of any agency authorized to enforce any such law. To the extent applicable, Contractor agrees to comply with Title VII of the Civil Rights Act of 1964, Executive Order 11246, and all additional orders, regulations, amendments, etc., pertaining thereto, including certification of nonsegregated facilities. The Contractor agrees to furnish such additional information, certifications, and policies as may be required by the Contract Documents. The Contractor agrees to comply with all applicable rules, regulations and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973 as amended, the Vietnam Era Veterans Readjustment Assistance Act of 1974 as amended, and the Americans with Disabilities Act of 1990.

(o) Contractor shall comply with all applicable federal, state and local laws, regulations and orders relating to occupational safety and health, and related procedures established by Construction Manager and shall, to the extent permitted by law, indemnify and hold Construction Manager and Owner, their directors, officers, agents and employees, harmless from any and all liability, public or private, penalties, contractual or otherwise, losses, damages, costs, attorney's fees, expenses, causes of action, claims or judgements resulting from a claim filed by anyone in connection with the aforementioned acts, or any rule, regulation or order promulgated thereunder, arising out of this Agreement or any subcontract hereunder. Contractor further agrees in event of a claim of violation of any such laws, regulations, orders or procedures arising out of or in any way connected with the performance of this Agreement, Construction Manager may immediately take whatever action is deemed necessary by Construction Manager to remedy the claim of violation. Any and all costs or expenses paid or incurred by Construction Manager in taking such action shall be borne by Contractor, and may be deducted by Construction Manager from any payments due Contractor.

The Contractor agrees to (1) comply with all safety rules and regulations and work practices and procedures established by the Construction Manager and/or the Owner; (2) take all necessary steps to promote safety and health on the jobsite; (3) cooperate with Construction Manager and other Contractors in preventing and eliminating safety and health hazards; (4) train, instruct and provide adequate supervision to assure that its employees are aware of, and comply with, applicable Federal and State safety and health laws, standards, regulations and rules, safe healthful work practices and all applicable safety rules, regulations, and work practices and procedures of the Construction Manager; (5) not create any hazards or expose any of its employees, employees of the Construction Manager or employees of Contractors to any hazards; (6) immediately abate all hazards within its control regardless of whether it created such hazard; and (7) where the Contractor is aware of the existence of a hazard not within its control, notify the Construction Manager of the hazard as well as warn exposed persons to avoid the hazard.

Contractor shall notify Construction Manager of any personal injury requiring medical treatment of any of Contractor's employees or others at the Project site; or of significant damage to property arising in connection with Contractor's performance, as promptly as possible after the occurrence of such injury or damage. Within forty-eight (48) hours of such occurrence, Contractor shall furnish to Construction Manager a complete written report of such injury or damage.

(p) Contractor agrees to provide and furnish prior to commencing Work, certificates of insurance in duplicate for Workers' Compensation, Public Liability and Property Damage Insurance and all other insurance of the kinds and with the limits set forth in the Contract Documents and in *Exhibit C* to this Agreement. All policies of insurance shall be with companies and in amounts acceptable to Construction Manager, and shall not be subject to modification or cancellation during the term of the Work hereunder without at least sixty (60) days prior written consent of Construction Manager. The Contractor accepts exclusive liability for contribution tax or premiums for Unemployment Compensation, Social Security, Withholding Tax and Workmen's Compensation.

(q) Contractor, if required by Construction Manager, shall furnish Performance and Labor and Material Payment Bonds covering the faithful performance of all work under this Agreement and the payment of all obligations arising hereunder, including the continuing obligations under the warranties specified in the Contract Documents. If required, such bonds shall be of an amount equal to the entire Contract Amount specified in Article 10 of this Agreement. Construction Manager shall have the right to reject the form of or the surety under such bonds.



(r) Contractor understands and agrees that it shall not deal directly with representatives of Owner, but shall handle all matters connected with this Agreement, the Work, or the furnishing of labor or materials or payment therefor, exclusively through Construction Manager unless otherwise directed in writing by Construction Manager.

(s) The Contract Documents are complementary and should be read so as to avoid inconsistent interpretations. In the event of variations, conflicts, ambiguities or inconsistencies between or among the terms, provisions or conditions of this Contract and any other Contract Documents, the terms, provisions and conditions which grant greater rights or remedies to Construction Manager or impose higher standards with regard to the obligations, responsibilities and scope of work of the Contractor shall control. Notwithstanding any other provisions of this Contract or of the Contract Documents, disputes hereunder shall not be resolved by arbitration unless Construction Manager agrees in writing to arbitration of such specific dispute. In the event that arbitration is specified in the Owner-Construction Management Agreement for disputes between Owner and Construction Manager, Contractor agrees, upon request of Construction Manager, to submit any related disputes, as determined by Construction Manager in its sole discretion, to arbitration and consolidation of said disputes with any arbitration or administrative proceeding between Construction Manager and Owner or any other party.

(t) This Trade Contract shall be governed by the laws of the State of Maryland, without regard to principles of conflict of laws. Any action or suit arising hereunder shall be brought in the jurisdiction where Construction Manager's principal office is located without regard to principles of conflict of laws or forum non conveniens. In the event of litigation between them, Construction Manager and Contractor waive trial by jury. If requested by Construction Manager, Contractor agrees to submit any dispute under this Trade Contract to arbitration under the Construction Industry Rules of the American Arbitration Association.

## ARTICLE 10. CONTRACT AMOUNT.

Construction Manager agrees to pay the Contractor for the performance of the Work under this Agreement,_____
Two million one hundred twelve thousand four hundred thirty dollars _____ ($2,112,430_____), which amount shall, unless otherwise specified in the Contract Documents, include, without limitation, all taxes, insurance premiums, charges for permits, any labor increases or material escalation costs which might occur during the course of construction, all other fees and charges, and all obligations and responsibilities of Contractor under the Contract Documents. In the event that the Contractor performs any additional or changed work on a cost plus basis or is entitled to additional compensation under Article 6(e) hereof, it shall be entitled only to the following percentages on the cost of such work for combined overhead and profit: *_____% for work performed by Contractor's own forces, and *___% for work performed by a subcontractor. Subcontractors shall likewise be entitled to *_____% for work performed by their own forces and *_____% for work performed by their subcontractors or suppliers. Such percentages include all office overheads and supervision above the level of foreman.

                                       * See EXHIBIT "H"

## ARTICLE 11. AMENDMENTS

There shall be no change to this Agreement by interlineation or notation to the text hereof. No change, modification, addition or deletion to the terms of this Agreement shall be binding on Construction Manager unless set forth on *Exhibit D* hereto and unless each page in *Exhibit D* is signed by a Vice President of Construction Manager, or, after execution of this Agreement, unless incorporated in a Change Order pursuant to Article 6 hereof.

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this Agreement, the day and year first above written

|  |  |
|---|---|
| _____ToltTest_____ | THE WHITING-TURNER CONTRACTING COMPANY |
| CONTRACTOR | CONSTRUCTION MANAGER |
| _[signature]_ | _[signature]_ |
| William E. Worwod, General Counsel | Keith Douglas – Division Vice President |
| PRINTED NAME AND TITLE | PRINTED NAME AND TITLE |
| Date: 2/21/06 | Date: 4/14/06 |
| Witness: _[signature]_ | Witness: _[signature]_ Kristopher Latt |

C-015
12/05/2000        T 7        Initialed by:
Construction Manager: KD    Contractor: WW