# EXHIBIT 2

**TOLTEST INC.**

Purchase Order: P001652

~~This is a Binding PO~~ JB 6/12/06

Tax ID: 341011985

Page: 1 of 1
Date Printed: 05/25/2006

*RECEIVED 5/31/06*

Order To: Acme Contracting, LTD.
PO Box 700523
Plymouth, MI 48170

31384

Ship To: Georgia Tech
374 Ferst Street
Atlanta, GA 30318

Contact: Mike Bates    Ph: 248-374-1911    Fax: 248-374-1922

| ORDER DATE | BUYER | TERMS | FOB | SALES ORDER | SHIP VIA | DELIVER TO |
|---|---|---|---|---|---|---|
| 05/25/06 | Jason Beier | PER ATTACHMT A | DEST | | BEST WAY | Wayne Lint |

| LINE | ITEM/DESCRIPTION | REV | U/M | DUE DATE | DESIRED DATE | QUANTITY | NET UNIT COST | EXTENDED COST |
|---|---|---|---|---|---|---|---|---|
| | A C K N O W L E D G M E N T   R E Q U I R E D | | | | | | | |
| | Period of Performance: 05/30/06 TO 08/30/06 | | | | | | | |
| | The attached Trade Contract between The Whiting-Turner Contracting Company and ToIrest, Inc. is incorporated into this Purchase Order Agreement in its entirety If any conflict between the Attachment A: Subcontract Agreement Terms and Conditions and the Trade Contract between The Whiting-Turner Contracting Company and ToTest, Inc. arises, the more stringent will apply | | | | | | | |
| 1 | DEMOLITION SUBCONTRACTOR Demolition and Site Work | | LS | 08/30/06 | 08/30/06 | 0.0000 | 0.0000 | $617,950.00 |
| | Req: RQ0000877 | | | | | | | |
| | AOP: 5500-01  1.5.32 | | | 20877.01 | | | | |
| 2 | DEMOLITION SUBCONTRACTOR Demolition and Site Work | | LS | 08/30/06 | 08/30/06 | 0.0000 | 0.0000 | $432,068.00 |
| | Req: RQ0000877 | | | | | | | |
| | AOP: 5500-01  1.5.32 | | | 20877.02 | | | | |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
This Subcontract Order is subject to the terms and conditions included herein as "
Attachment A Subcontractor Services Agreement Terms and Conditions."
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
ATTACHMENT B - SCOPE OF WORK - IS INCLUDED AND INCORPORATED AS ATTACHMENT "B" TO THIS
PURCHASE ORDER.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
THIS ORDER REQUIRES 100% PAYMENT & PERFORMANCE BONDS.

**TOLTEST INC.**

**TOLTEST INC.**

Purchase Order: P001652
This is a Pending PO   SB 6/12/06
Tax ID: 341011985

Page: 2 of 3
Date Printed: 05/25/2006
5/5/06

Order To: Acme Contracting, LTD.
PO Box 700523
Plymouth, MI 48170

31384

Contact: Mike Bates   Ph: 248-374-1911   FAX: 248-374-1922

| ORDER DATE | BUYER | TERMS | FOB | SALES ORDER | SHIP VIA | DELIVER TO |
|---|---|---|---|---|---|---|
| 05/25/06 | Jason Beier | PER ATTACHMT A | DEST | | BEST WAY | Wayne Lint |

| LINE | ITEM/DESCRIPTION | REV. | U/M | DATE DATE | PROMISED DATE | QUANTITY | NET UNIT COST | EXTENDED COST |
|---|---|---|---|---|---|---|---|---|
| | Invoices applied to this Purchase Order are subject to 5% withholding retainage. | | | | | | | |
| | VENDOR ACKNOWLEDGMENT | | | | | | | |
| | *MIKE BATES*  NAME & TITLE | | | | | | | |
| | SIGNATURE  *6/9/06*  DATE | | | | | | | |
| | JASON BEIER, CONTRACT ADMINISTRATOR PHONE: 419-794-3655  FAX: 419-794-3907 CELL: 419-205-0537 | | | | | | | |
| | Bill To: TOLTEST, INC. 1480 Ford Street  Maumee, OH 43537-1731 | | | | | | PO Total Amt: | $1,050,018.00 |

**TODTEST INC.**

Purchase Order: P001652

~~This is a Pending PO~~  STS 6/12/06

Tax ID: 341011985

Order To: Acme Contracting, LTD.
PO Box 700523
Plymouth, MI 48170

31384

Contact: Mike Bates    Ph: 248-374-1911    Fax: 248-374-1922

| ORDER DATE | BUYER | TERMS | FOB | SALES ORDER | SHIP VIA | DELIVER TO |
|---|---|---|---|---|---|---|
| 05/25/06 | Jason Beier | PER ATTACHMT A | DEST | | BEST WAY | Wayne Lint |

| LINE | ITEM/DESCRIPTION | REV. | U/M | DUE DATE | DESIRED DATE | QUANTITY | NET UNIT COST | EXTENDED COST |
|---|---|---|---|---|---|---|---|---|
| | *Authorized Signature(s)* 6/12/06 | | | | | | | |



## ATTACHMENT A

## SUBCONTRACTOR SERVICE AGREEMENT TERMS AND CONDITIONS

This Agreement is entered into by and between ToiTest and SUBCONTRACTOR or of the date above written. In and for the consideration contained herein, the two of which is acknowledged, the parties agree as follows:

**1. PRIME AGREEMENT.** The SUBCONTRACTOR acknowledges that ToiTest has entered into an agreement with a third party, hereinafter called the CLIENT, for services in connection with the job identified herein (PRIME CONTRACT). The SUBCONTRACTOR is not permitted to contact the CLIENT regarding issues relative to the Job or Agreement without prior written consent of ToiTest. SUBCONTRACTOR further agrees and promises that: (a) it be developed, executed, inspected and thoroughly documented itself work the Job and attaining promises in connection with which the work covered by the Purchase Order is to be performed; (b) it be thoroughly informed itself as to all difficulties involved in the execution of all the work covered by this Purchase Order; and (c) ToiTest has made no representations of any kind with reference thereto not contained in this Purchase Order. ToiTest and/or CLIENT furnished data as information to duty for SUBCONTRACTOR's convenience and not guaranteed.

**2. SCOPE OF SERVICE.** SUBCONTRACTOR shall furnish all labor, material, supplies, work and supervision to diligently perform the Work as set forth herein. SUBCONTRACTOR represents and warrants that all work performed by it is pursuant to this AGREEMENT (b) will conform with the terms of this AGREEMENT; (b) will be performed in good, skillful, and workmanlike manner; (c) will be performed by the proper number of experienced, skilled, and licensed personnel, qualified by education and/or experience to perform their assigned tasks; and (d) to the extent professional services are rendered, will conform to the prevailing standard of care, skill, and diligence exercised by other similar professionals performing the same or similar service. SUBCONTRACTOR shall have at the job site at all times, in compliance with applicable working experience requirements and other necessary to ToiTest, the authority to act for SUBCONTRACTOR. Further, the Work shall be performed in accordance with the completion and pertinent documents set forth in the PRIME CONTRACT and any plans, general requirements or technical specification provided by ToiTest to SUBCONTRACTOR.

At all times during performance of the Work, SUBCONTRACTOR shall remove from the job site and vicinity all debris, rubbish and surplus materials resulting from the Work. Upon completion of the Work, SUBCONTRACTOR shall leave the job site and vicinity clean and ready for use. SUBCONTRACTOR shall promptly comply with ToiTest's reasonable request to perform such cleanup at any time, or particularly during work progress. ToiTest reserves though to backcharge SUBCONTRACTOR for cleanup work not performed as specified herein.

If any utility service must be discontinued (even temporarily) due to the Work, the SUBCONTRACTOR shall notify the ToiTest Representative at least 10 calendar days in advance of such interruption.

The SUBCONTRACTOR agrees to be bound in writing by ToiTest, without jurisdiction this AGREEMENT, or such charges to the Work within the general scope of the AGREEMENT. The price and time of performance being deemed accordingly pursuant to a SUBCONTRACTOR Change Order Agreement (OMK 1)

**3. SCHEDULE.** The Work shall be performed according to the schedule outlined by ToiTest, which may be modified per the instructions of the ToiTest Project Manager. Time is of the essence to the performance of the Work. SUBCONTRACTOR shall schedule its operations so as to proceed with the Work orderly and continuous until the Work is to be performed hereunder the job site or before that completion date. SUBCONTRACTOR agrees to coordinate with and not interfere with other work to be on the job by any other contractor, whose work may overlap or conflict with the terms of the Work covered this Purchase Order. In the event of any delay, including delays caused by others, SUBCONTRACTOR agrees to obtain by the resolution and decision of ToiTest. Any extension of the contract completion date or any period hereunder and any increase payment and/or delayed is general. Approval of schedule submitted by SUBCONTRACTOR shall not be construed by ToiTest in writing, properly executed and to relieve any requirements. Nothing in this Section or the job schedule. SUBCONTRACTOR shall not be entitled to extra compensation for any interruption, delay or nonadvertised specifically allowed and paid to ToiTest by its CLIENT or SUBCONTRACTOR's benefit.

**4. HEALTH AND SAFETY.** The SUBCONTRACTOR acknowledges that it is familiar with the work scope to be performed herein, the inherent hazardous conditions of the Job Site, and the necessity for the safety of its personnel and others during the performance of the Work. Specifically, the SUBCONTRACTOR shall comply with all applicable safety laws and regulations including, but not limited to, those under federal and state occupational, laws, and regulations including the provisions of 29CFR.1910 and 29CFR.1926. In rendering requirement under, SUBCONTRACTOR will comply with the requirements of ToiTest. By rendering the services referred herein, SUBCONTRACTOR affirmatively represents that it personnel, before they are allowed on the job site, will receive and acknowledge their obligation to comply with the safety and health requirements of the AGREEMENT.

SUBCONTRACTOR will designate an individual of its job site, and in its employ, who is a "competent person" as defined by regulations issued under the Occupational Safety and Health Act, and who shall act as SUBCONTRACTOR's designated safety representative. The SUBCONTRACTOR's safety representative will have a duty to prevent accidents. Unless otherwise identified by SUBCONTRACTOR in writing, the designated safety representative shall be SUBCONTRACTOR's On-Site Job Superintendent.

When so ordered, SUBCONTRACTOR shall stop any part of the Work that ToiTest deems unsafe until corrective measure satisfactory to ToiTest have been adopted. Should SUBCONTRACTOR neglect to adopt such correction measure, ToiTest may do so and deduct the cost from payments due as to become due SUBCONTRACTOR.

SUBCONTRACTOR shall give prompt written notice to ToiTest for all incidents, lost time accidents and illnesses, property damage over $1,000, or any accidents or failures that could have resulted in serious personal injury or property damage, whether such injury or damage actually was sustained. SUBCONTRACTOR also shall maintain an on-site daily record of first aid treatments administered, which treatments are not otherwise reportable. These reports shall be made available to ToiTest upon request.

ToiTest Purchase Order Agreement – Form 702
Revised 3/26/03

SUBCONTRACTOR shall maintain in effect all necessary written programs, certifications, licenses and permits required to prosecute the Work in accordance with Occupational Safety and Health laws and regulations. SUBCONTRACTOR's employees also shall have all the necessary training and current certifications necessary to prosecute the Work.

SUBCONTRACTOR's failure to familiarize itself thoroughly with the aforementioned safety provisions will not relieve it from compliance with the obligations and penalties set forth herein.

SUBCONTRACTOR shall continuously maintain adequate protection of all its work from damage and shall protect TolTest's property from injury or loss arising in connection with this Purchase Order. SUBCONTRACTOR shall adequately protect adjacent property as provided by law and the Purchase Order documents. All loss or damage to the Work resulting from any cause whatsoever shall be borne and sustained by SUBCONTRACTOR and shall be solely at its risk until final acceptance by TolTest. SUBCONTRACTOR shall protect all labor, materials, supplies, tools and equipment against any damage, injury, destruction, theft or loss and in no event shall TolTest be liable or responsible to SUBCONTRACTOR therefor. SUBCONTRACTOR, at its expense, shall promptly repair or replace damage to the work of others, or to any part of the job, resulting from its activities.

If SUBCONTRACTOR is cited for violations of government regulations and TolTest is also cited due to such allegations, TolTest may hold funds in the amount of the proposed fines in addition to any retention being held and deduct actual fines required to be paid by TolTest from final payment to SUBCONTRACTOR.

**5.  INSPECTIONS AND APPROVALS:** SUBCONTRACTOR shall provide sufficient safe and proper facilities for inspection of the Work by TolTest, its CLIENT and all other authorized individuals. SUBCONTRACTOR shall notify TolTest when portions of the Work are ready for inspection.

SUBCONTRACTOR shall, within 24 hours of receiving written notice from TolTest, proceed to take down, remove or correct all portions of the Work which TolTest shall condemn as unsound, improper or in any way failing to meet the requirements of this AGREEMENT. SUBCONTRACTOR, at its own expense, shall make good the Work and all other work damaged by such removal and replace it with materials, equipment and workmanship meeting the requirements of this AGREEMENT. Failure to do so within the time specified or agreed to extension shall constitute breach of this AGREEMENT and give TolTest the right to correct and backcharge and/or terminate SUBCONTRACTOR for default.

SUBCONTRACTOR shall promptly furnish shop drawings, manufacturers' data, templates, schedules, reports or any other data that may be necessary, in the opinion of TolTest, for review and approval or for distribution to TolTest or other SUBCONTRACTORs for the proper, efficient and timely prosecution of the Work. SUBCONTRACTOR shall exercise the utmost diligence in obtaining all drawings, details and information necessary to perform the Work; if at any time drawings or information necessary to complete the Work not been furnished, SUBCONTRACTOR shall promptly inform TolTest in writing as to the drawings or other information that may be required.

SUBCONTRACTOR will be responsible for laying out its own work and shall be responsible for the accuracy of same. SUBCONTRACTOR shall, before proceeding with any affected part of the Work, call to TolTest's attention, in writing, any errors or inconsistencies in the PRIME CONTRACT, this AGREEMENT or any drawing, document or other information provided thereunder.

SUBCONTRACTOR shall promptly perform all punch list work identified by TolTest during completion or other inspections.

**6.  PERMITS AND RESPONSIBILITY:** SUBCONTRACTOR, without expense to TolTest, shall obtain and pay for all required licenses, permits, inspections, and registrations and shall obey and abide by all applicable laws, regulations, ordinances, and other rules of the United States of America, of the state or any other duly constituted public authority as applicable to the Purchase Order and will give all necessary notices required in connection with those permits and licenses.

**7.  DIFFERING SITE CONDITIONS:** SUBCONTRACTOR shall notify TolTest, in writing, of the following unforeseen conditions (hereinafter called Differing Site Conditions), promptly upon their discovery (but in no event later than 14 calendar days thereafter) and before they are disturbed: (a) subsurface or latent physical conditions at the job site differing materially from those indicated, described, or delineated in this AGREEMENT or the job specifications; and (b) unknown physical conditions at the job site differing materially from those ordinarily encountered and generally recognized as inherent in the Work of the character provided for in this AGREEMENT.

TolTest, in consultation with its CLIENT, will review the pertinent conditions, determine the necessity of obtaining additional explorations or tests with respect thereto, and advise SUBCONTRACTOR, in writing, of its findings and conclusions.

If TolTest concludes that because of newly discovered conditions a change in the Work is required, a Change Order will be issued as provided herein to reflect and document the consequences of the Differing Site Condition.

In each such case, an increase or decrease in the job price or an extension or shortening of the job schedule, or any combination thereof, will be allowable to the extent that they are attributable to any such difference. If TolTest and SUBCONTRACTOR are unable to agree as to the amount or length thereof, a claim may be made therefor as provided herein.

SUBCONTRACTOR's failure to give notice of differing site conditions within 14 calendar days of their discovery or before they are disturbed shall constitute a waiver of all claims in connection therewith, whether direct or consequential in nature.

**8.  PAYMENT:** For services rendered, TolTest agrees to compensate SUBCONTRACTOR as specified herein. Invoices will be due to TolTest the 25th of the month. It is agreed and understood by SUBCONTRACTOR that such invoices must be supported by documentation as may be required by TolTest or its CLIENT. SUBCONTRACTOR's invoices are a material element in preparation of TolTest's invoice to its CLIENT, and as such, TolTest must require that SUBCONTRACTOR invoice TolTest promptly. Invoices received by TolTest more than thirty (30) days after either the end of each month or completion of this Purchase Order, whichever time is the lesser, will only be paid to the extent such invoices can be included in TolTest's invoice to its CLIENT. TolTest will diligently pursue payment of SUBCONTRACTOR's invoices by its CLIENT and TolTest shall, within ten (10) days after receipt of such payment make payment to SUBCONTRACTOR. All invoices must reference the Purchase Order Number, Job Number, include an invoice number, and completed and executed lien waivers (Exhibits 2 and 3) to be processed for payment. Incomplete invoices will be rejected and returned to the SUBCONTRACTOR.

SUBCONTRACTOR shall submit one original and one copy (complete with any necessary backup information) of all invoices not more than once per month. Invoices submitted by SUBCONTRACTOR will: (a) accurately describe the Work services rendered during the invoice period; (b) reference the TolTest Purchase Order number; and (c) include any applicable equipment, labor and/or material warranty cards, and copies of inspection reports, etc. applicable to invoice items. Invoice amounts for progress payments shall be based on a percentage of work completed for each bid item or completed quantities of approved unit rate bid items through the invoice period. TolTest will approve the percentages/quantities before acceptance of the invoice. Unless otherwise prescribed by law, TolTest may retain 10 percent of each approved payment.

TolTest Purchase Order Agreement – Form 702
Revised 8/16/05

SUBCONTRACTOR shall maintain in effect all necessary written programs, certifications, licenses and permits required to prosecute the Work in accordance with Occupational Safety and Health laws and regulations. SUBCONTRACTOR's employees also shall have all the necessary training and current certifications necessary to prosecute the Work.

SUBCONTRACTOR's failure to familiarize itself thoroughly with the aforementioned safety provisions will not relieve it from compliance with the obligations and penalties set forth herein.

SUBCONTRACTOR shall continuously maintain adequate protection of all its work from damage and shall protect TolTest's property from injury or loss arising in connection with this Purchase Order. SUBCONTRACTOR shall adequately protect adjacent property as provided by law and the Purchase Order documents. All loss or damage to the Work resulting from any cause whatsoever shall be borne and sustained by SUBCONTRACTOR and shall be solely at its risk until final acceptance by TolTest. SUBCONTRACTOR shall protect all labor, materials, supplies, tools and equipment against any damage, injury, destruction, theft or loss and in no event shall TolTest be liable or responsible to SUBCONTRACTOR therefor. SUBCONTRACTOR, at its expense, shall promptly repair or replace damage to the work of others, or to any part of the job, resulting from its activities.

If SUBCONTRACTOR is cited for violations of government regulations and TolTest is also cited due to such allegations, TolTest may hold funds in the amount of the proposed fines in addition to any retention being held and deduct actual fines required to be paid by TolTest from final payment to SUBCONTRACTOR.

5. INSPECTIONS AND APPROVALS: SUBCONTRACTOR shall provide sufficient safe and proper facilities for inspection of the Work by TolTest, its CLIENT and all other authorized individuals. SUBCONTRACTOR shall notify TolTest when portions of the Work are ready for inspection.

SUBCONTRACTOR shall, within 24 hours of receiving written notice from TolTest, proceed to take down, remove or correct all portions of the Work which TolTest shall condemn as unsound, improper or in any way failing to meet the requirements of this AGREEMENT. SUBCONTRACTOR, at its own expense, shall make good the Work and all other work damaged by such removal and replace it with materials, equipment and workmanship meeting the requirements of this AGREEMENT. Failure to do so within the time specified or agreed to extension shall constitute breach of this AGREEMENT and give TolTest the right to correct and backcharge and/or terminate SUBCONTRACTOR for default.

SUBCONTRACTOR shall promptly furnish shop drawings, manufacturers' data, templates, schedules, reports or any other data that may be necessary, in the opinion of TolTest, for review and approval or for distribution to TolTest or other SUBCONTRACTORs for the proper, efficient and timely prosecution of the Work. SUBCONTRACTOR shall exercise the utmost diligence in obtaining all drawings, details and information necessary to perform the Work; if at any time drawings or information necessary to complete the Work not been furnished, SUBCONTRACTOR shall promptly inform TolTest in writing as to the drawings or other information that may be required.

SUBCONTRACTOR will be responsible for laying out its own work and shall be responsible for the accuracy of same. SUBCONTRACTOR shall, before proceeding with any affected part of the Work, call to TolTest's attention, in writing, any errors or inconsistencies in the PRIME CONTRACT, this AGREEMENT or any drawing, document or other information provided thereunder.

SUBCONTRACTOR shall promptly perform all punch list work identified by TolTest during completion or other inspections.

6. PERMITS AND RESPONSIBILITY: SUBCONTRACTOR, without expense to TolTest, shall obtain and pay for all required licenses, permits, inspections, and registrations and shall obey and abide by all applicable laws, regulations, ordinances, and other rules of the United States of America, of the state or any other duly constituted public authority as applicable to the Purchase Order and will give all necessary notices required in connection with those permits and licenses.

7. DIFFERING SITE CONDITIONS: SUBCONTRACTOR shall notify TolTest, in writing, of the following unforeseen conditions (hereinafter called Differing Site Conditions), promptly upon their discovery (but in no event later than 14 calendar days thereafter) and before they are disturbed: (a) subsurface or latent physical conditions at the job site differing materially from those indicated, described, or delineated in this AGREEMENT or the job specifications; and (b) unknown physical conditions at the job site differing materially from those ordinarily encountered and generally recognized as inherent in the Work of the character provided for in this AGREEMENT.

TolTest, in consultation with its CLIENT, will review the pertinent conditions, determine the necessity of obtaining additional explorations or tests with respect thereto, and advise SUBCONTRACTOR, in writing, of its findings and conclusions.

If TolTest concludes that because of newly discovered conditions a change in the Work is required, a Change Order will be issued as provided herein to reflect and document the consequences of the Differing Site Condition.

In each such case, an increase or decrease in the job price or an extension or shortening of the job schedule, or any combination thereof, will be allowable to the extent that they are attributable to any such difference. If TolTest and SUBCONTRACTOR are unable to agree as to the amount or length thereof, a claim may be made therefor as provided herein.

SUBCONTRACTOR's failure to give notice of differing site conditions within 14 calendar days of their discovery or before they are disturbed shall constitute a waiver of all claims in connection therewith, whether direct or consequential in nature.

8. PAYMENT: For services rendered, TolTest agrees to compensate SUBCONTRACTOR as specified herein. Invoices will be due to TolTest by the 25th of the month. It is agreed and understood by SUBCONTRACTOR that such invoices must be supported by documentation as may be required by TolTest or its CLIENT. SUBCONTRACTOR's invoices are a material element in preparation of TolTest's invoice to its CLIENT, and as such, TolTest must require that SUBCONTRACTOR invoice TolTest promptly. Invoices received by TolTest more than thirty (30) days after either the end of each month or completion of this Purchase Order, whichever time is the lesser, will only be paid to the extent such invoices can be included in TolTest's invoice to its CLIENT. TolTest will diligently pursue payment of SUBCONTRACTOR's invoices by its CLIENT and TolTest shall, within ten (10) days after receipt of such payment make payment to SUBCONTRACTOR. All invoices must reference the Purchase Order Number, Job Number, include an invoice number, and completed and executed lien waivers (Exhibits 2 and 3) to be processed for payment. Incomplete invoices will be rejected and returned to the SUBCONTRACTOR.

SUBCONTRACTOR shall submit one original and one copy (complete with any necessary backup information) of all invoices not more than once per month. Invoices submitted by SUBCONTRACTOR will: (a) accurately describe the Work services rendered during the invoice period; (b) reference the TolTest Purchase Order number; and (c) include any applicable equipment, labor and/or material warranty cards, and copies of inspection reports, etc. applicable to invoice items. Invoice amounts for progress payments shall be based on a percentage of work completed for each bid item or completed quantities of approved unit rate bid items through the invoice period. TolTest will approve the percentages/quantities before acceptance of the invoice. Unless otherwise prescribed by law, TolTest may retain 10 percent of each approved payment.

After completion of the Work, and after SUBCONTRACTOR's submittal to TelVet of all required closeout documents including, but not limited to: (a) an affidavit of certified payroll asserting that all required certified payrolls have been submitted to TelVet; (b) payment of SUBCONTRACTOR's surety to find performance and payment bonds; and (c) any and all liens or claims of lien by SUBCONTRACTOR, its agents, suppliers, materialmen and/or subcontractors, waived or otherwise resolved, SUBCONTRACTOR shall be entitled to final payment...

SUBCONTRACTOR shall not make any action hereunder which could cause the amount for which TelVet would be obligated to SUBCONTRACTOR to exceed the sum permitted in the TelVet Purchase Order Agreement, (hereinafter referred to as "Not Price").

**7.** **TAXES/AUTHORIZED.** Except to the extent expressly provided otherwise elsewhere in the AGREEMENT, SUBCONTRACTOR shall pay when due, and the AGREEMENT price shall be inclusive of all local, municipal, state and federal sales and use taxes, excise taxes, duties and all other governmental fees...

**12.** **LIENS AND ENCUMBRANCES.** The SUBCONTRACTOR, for itself, its SUBCONTRACTORs, suppliers, materialmen and employees, waives, relinquishes and releases any and all rights which it may have to any claim or claim of lien...

**13.** **GOVERNING LAW.** The validity, interpretation and performance of this Agreement shall be governed and construed in accordance with the laws of Ohio.

**11.** **SUCCESSORS & ASSIGNS.** TelVet and the SUBCONTRACTOR each binds itself, its partners, successors, administrators and assigns...

**14.** **SCOPE OF AGREEMENT.** This document, and any including attachments, which are identified herein, constitutes the entire Agreement between TelVet and the SUBCONTRACTOR. There are no conditions, agreements, or representations between the parties except those expressed herein. This Agreement may be altered, amended, or appended only by a duly executed written instrument.

**14.** **INDEMNITY AND LIABILITY.** To the fullest extent permitted by law, SUBCONTRACTOR agrees to indemnify, defend and hold harmless TelVet and its CLIENT, and all of their respective directors, officers, employees, servants, volunteers and agents from and against any and all liabilities...

**34.** **INSURANCE.** The SUBCONTRACTOR shall provide insurance of the types and in the amounts as set forth in the Insurance Requirements listed below.

**A.** General: The SUBCONTRACTOR shall not commence any work until it has obtained at the own expense, all required insurance. Such insurance must have the approval of TelVet as to kind, form and amount.

**1.** Types: The types of insurance described below are required to obtain and maintain for the full period of the AGREEMENT will be placed with a reputable insurer to include, Workmen's Compensation Insurance, Comprehensive General Liability Insurance, a Comprehensive Automobile Policy, a Protective Liability Policy, and a Professional Liability Policy, as detailed in the following portions of this specification.

**2.** Evidence: As evidence of specified insurance coverage, the SUBCONTRACTOR shall submit, prior to commencing any work and before any proposal is made, certificates issued by the insurance carrier showing...

**3.** Payment of Damages: Nothing contained in these insurance requirements is to be construed as limiting the extent of the SUBCONTRACTOR's responsibility for payment of damages resulting from its operations under this AGREEMENT.

**B.** Workmen's Compensation Insurance. Before the AGREEMENT between TelVet and the SUBCONTRACTOR is executed, full Workmen's Compensation Insurance coverage of all proposals and subprojects shall comply with the provisions of the AGREEMENT. This insurance shall be in effect in accordance with the requirements of the most current and applicable State Workmen's Compensation Insurance Laws.

**C.** Comprehensive General Liability Insurance. Before commencement of the services, the SUBCONTRACTOR shall submit written evidence that it has obtained, for the period of the AGREEMENT, full Comprehensive General Liability Insurance coverage. This coverage shall provide both bodily injury and...

TelVet Purchase Order Agreement – Form 182
Revised 9/05/05

property damage. The Comprehensive General Liability Insurance will include as Additional Insured: TolTest, as respects to the services performed by the SUBCONTRACTOR under this AGREEMENT. This insurance shall include but not be limited to XCU (Explosion, Collapse, Underground), Broad Form Property Damage, Completed Operations, and Contractual Liability Coverage. The Comprehensive General Liability shall include coverage in an amount not less than a combined single limit of $1,000,000 for bodily injury and/or property damage arising out of any one occurrence.

D. Comprehensive Automobile Liability shall include coverage applying to owned, non-owned, and hired automobiles in an amount of not less than a combined single limit of $1,000,000 for bodily injury, property damage, including death arising out of any one occurrence.

E. Contractors Pollution and/or Professional Errors and Omissions Liability Insurance coverage, if applicable to the Work of this AGREEMENT, in an amount not less than a combined single limit of $1,000,000 arising out of any one occurrence.

F. Except for Workers' Compensation and Professional Liability insurance, the insurance coverage noted above will name TolTest and CLIENT and all of their respective directors, partners, successors, executors, administrators, and employees as additional insureds with respect to the operations of the named insured. Such insurance will be the primary coverage and not contributory to TolTest and its client. If such policies do not contain the standard ISO separation of insureds provision, or a substantially similar clause, they shall be endorsed to provide cross-liability coverage.

16. DOCUMENTS: All data collected by the SUBCONTRACTOR and all documents, notes, drawings, tracings and files collected or prepared in connection with these services, except the SUBCONTRACTOR'S personnel and administrative files, shall be made available to TolTest; and TolTest shall not be restricted in any way whatsoever in its use of such material.

17. TERMINATION: If the CLIENT terminates the PRIME AGREEMENT, TolTest shall deliver written notice to SUBCONTRACTOR and the SUBCONTRACTOR shall stop all work immediately upon written notice from TolTest.

If Subcontractor at any time shall refuse or neglect to supply adequate and competent supervision, or sufficient properly skilled workmen or materials of the proper quality or quantity, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any agreement on his part herein contained, TolTest shall have the option after 48 hours written notice to Subcontractor, to provide any such labor or materials and to deduct the cost thereof from any money due or thereafter to become due by TolTest to Subcontractor. TolTest shall also be at liberty to terminate the employment of Subcontractor on said work and to enter upon the premises and take possession of all materials or appliances, of any kind whatsoever, thereon and to employ any other person or persons to finish the work and to provide the materials therefore; and in the case of such discontinuance of the employment of Subcontractor, Subcontractor shall not be entitled to receive any payment under this Subcontract which might otherwise be due Subcontractor, until the said work shall be finished and payment in full therefore shall be made by Client to TolTest, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the expenses incurred by the TolTest in finishing Subcontractor's work, such excess shall be paid by TolTest to Subcontractor, but if such expense shall exceed such unpaid balance, Subcontractor shall pay the difference to TolTest as well as TolTest's cost, expenses, and attorneys' fees.

18. TolTest, by written notice, shall have the right to terminate and cancel this AGREEMENT, without SUBCONTRACTOR being at fault, for any cause or for its own convenience, and require the SUBCONTRACTOR to immediately stop work. In such event, TolTest shall pay SUBCONTRACTOR for the work actually performed in an amount proportionate to this AGREEMENT price. TolTest shall not be liable to the SUBCONTRACTOR for any other sum, including prospective profits on work not performed. However, if the reason for the termination and cancellation of this AGREEMENT is due to any default or action by the CLIENT, A/E or as a result of Court Order or public authority, then TolTest shall not be liable to the SUBCONTRACTOR for any sum greater than that which TolTest receives from CLIENT on behalf of SUBCONTRACTOR'S performance, less any costs incurred by TolTest.

19. CONFIDENTIALITY: The SUBCONTRACTOR agrees that, in the performance of work hereunder, its personnel will maintain the confidentiality of this Job. In this regard, the SUBCONTRACTOR'S personnel shall not disclose any data or information to any party other than TolTest's personnel concerning the Job Site or the Job, including without limitation, the nature or results of the work performed by the SUBCONTRACTOR hereunder, and the SUBCONTRACTOR shall direct all third party inquiries or comments to TolTest's on-site representatives.

20. LABOR STANDARDS:

~~A. If so indicated, this job is subject to the Davis-Bacon Act (40 U.S.C. 276a-276a-7) and the SUBCONTRACTOR will be required to comply with all associated regulations, including the submission of weekly certified payrolls. The SUBCONTRACTOR acknowledges that it understands these regulations and requirements. Payment to the SUBCONTRACTOR by TolTest will be contingent upon the receipt of original signed certified payrolls approved by TolTest for all weeks covered by the SUBCONTRACTOR'S invoice.~~

B. Equal Employment Opportunity - Unless otherwise exempt, SUBCONTRACTOR agrees to comply with the Equal Employment Opportunity clause and the regulations of the Department of Labor contained in Title 41 of the Code of Federal Regulations (CFR), Chapter 60, which are incorporated herein by reference

~~C. Affirmative Action for Disabled Veterans and Vietnam-era Veterans - If the AGREEMENT equals or exceeds $25,000 and is not otherwise exempt, SUBCONTRACTOR agrees to comply with the Affirmative Action clause and the regulations of the Department of Labor contained in Title 41 CFR, Part 60-250, which are incorporated herein by reference.~~

~~D. Affirmative Action for Disabled Workers - If the AGREEMENT exceeds $10,000 and is not otherwise exempt, SUBCONTRACTOR agrees to comply with the Affirmative Action clause and the regulations of the Department of Labor contained in Title 41 CFR, Part 60-741, which are incorporated herein by~~ reference.

# Attachment B:
Scope of Work

## Attachment B: Scope of Work

Provide all labor, supervision, equipment, and transportation to complete the Scope of Work referenced in the attached Trade Contract between The Whiting-Turner Contracting Company and TolTest, Inc.

The following exceptions apply:


### Exceptions for the RRB

Acme will not be responsible for paragraph B, items 1 through 8 as detailed on page T-18. TolTest will provide the signage necessary to comply with rules and regulations relevant solely to asbestos removal.

### Exceptions for Neely Reactor

Acme will not be responsible for paragraph B, items:

1
2
3
4
5
6
7
9
10
18

TolTest will be responsible for the hauling permits necessary for the removal of asbestos and other hazardous materials.

TolTest will be responsible for providing engineer approved drawings for the scaffold necessary to access asbestos.

TolTest will provide the signage necessary to comply with rules and regulations relevant solely to asbestos removal.