# EXHIBIT 8

SUBCONTRACTOR shall maintain in effect all necessary written programs, certifications, licenses and permits required to prosecute the Work in accordance with Occupational Safety and Health laws and regulations. SUBCONTRACTOR's employees also shall have all the necessary training and current certifications necessary to prosecute the Work.

SUBCONTRACTOR's failure to familiarize itself thoroughly with the aforementioned safety provisions will not relieve it from compliance with the obligations and penalties set forth herein.

SUBCONTRACTOR shall continuously maintain adequate protection of all its work from damage and shall protect TolTest's property from injury or loss arising in connection with this Purchase Order. SUBCONTRACTOR shall adequately protect adjacent property as provided by law and the Purchase Order documents. All loss or damage to the Work resulting from any cause whatsoever shall be borne and sustained by SUBCONTRACTOR and shall be solely at its risk until final acceptance by TolTest. SUBCONTRACTOR shall protect all labor, materials, supplies, tools and equipment against any damage, injury, destruction, theft or loss and in no event shall TolTest be liable or responsible to SUBCONTRACTOR therefor. SUBCONTRACTOR, at its expense, shall promptly repair or replace damage to the work of others, or to any part of the job, resulting from its activities.

If SUBCONTRACTOR is cited for violations of government regulations and TolTest is also cited due to such allegations, TolTest may hold funds in the amount of the proposed fines in addition to any retention being held and deduct actual fines required to be paid by TolTest from final payment to SUBCONTRACTOR.

5. **INSPECTIONS AND APPROVALS:** SUBCONTRACTOR shall provide sufficient safe and proper facilities for inspection of the Work by TolTest, its CLIENT and all other authorized individuals. SUBCONTRACTOR shall notify TolTest when portions of the Work are ready for inspection.

SUBCONTRACTOR shall, within 24 hours of receiving written notice from TolTest, proceed to take down, remove or correct all portions of the Work which TolTest shall condemn as unsound, improper or in any way failing to meet the requirements of this AGREEMENT. SUBCONTRACTOR, at its own expense, shall make good the Work and all other work damaged by such removal and replace it with materials, equipment and workmanship meeting the requirements of this AGREEMENT. Failure to do so within the time specified or agreed to extension shall constitute breach of this AGREEMENT and give TolTest the right to correct and backcharge and/or terminate SUBCONTRACTOR for default.

SUBCONTRACTOR shall promptly furnish shop drawings, manufacturers' data, templates, schedules, reports or any other data that may be necessary, in the opinion of TolTest, for review and approval or for distribution to TolTest or other SUBCONTRACTORs for the proper, efficient and timely prosecution of the Work. SUBCONTRACTOR shall exercise the utmost diligence in obtaining all drawings, details and information necessary to perform the Work; if at any time drawings or information necessary to complete the Work not been furnished, SUBCONTRACTOR shall promptly inform TolTest in writing as to the drawings or other information that may be required.

SUBCONTRACTOR will be responsible for laying out its own work and shall be responsible for the accuracy of same. SUBCONTRACTOR shall, before proceeding with any affected part of the Work, call to TolTest's attention, in writing, any errors or inconsistencies in the PRIME CONTRACT, this AGREEMENT or any drawing, document or other information provided thereunder.

SUBCONTRACTOR shall promptly perform all punch list work identified by TolTest during completion or other inspections.

6. **PERMITS AND RESPONSIBILITY:** SUBCONTRACTOR, without expense to TolTest, shall obtain and pay for all required licenses, permits, inspections, and registrations and shall obey and abide by all applicable laws, regulations, ordinances, and other rules of the United States of America, of the state or any other duly constituted public authority as applicable to the Purchase Order and will give all necessary notices required in connection with those permits and licenses.

7. **DIFFERING SITE CONDITIONS:** SUBCONTRACTOR shall notify TolTest, in writing, of the following unforeseen conditions (hereinafter called Differing Site Conditions), promptly upon their discovery (but in no event later than 14 calendar days thereafter) and before they are disturbed: (a) subsurface or latent physical conditions at the job site differing materially from those indicated, described, or delineated in this AGREEMENT or the job specifications; and (b) unknown physical conditions at the job site differing materially from those ordinarily encountered and generally recognized as inherent in the Work of the character provided for in this AGREEMENT.

TolTest, in consultation with its CLIENT, will review the pertinent conditions, determine the necessity of obtaining additional explorations or tests with respect thereto, and advise SUBCONTRACTOR, in writing, of its findings and conclusions.

If TolTest concludes that because of newly discovered conditions a change in the Work is required, a Change Order will be issued as provided herein to reflect and document the consequences of the Differing Site Condition.

In each such case, an increase or decrease in the job price or an extension or shortening of the job schedule, or any combination thereof, will be allowable to the extent that they are attributable to any such difference. If TolTest and SUBCONTRACTOR are unable to agree as to the amount or length thereof, a claim may be made therefor as provided herein.

SUBCONTRACTOR's failure to give notice of differing site conditions within 14 calendar days of their discovery or before they are disturbed shall constitute a waiver of all claims in connection therewith, whether direct or consequential in nature.

8. **PAYMENT:** For services rendered, TolTest agrees to compensate SUBCONTRACTOR as specified herein. Invoices will be due to TolTest by the 25th of the month. It is agreed and understood by SUBCONTRACTOR that such invoices must be supported by documentation as may be required by TolTest or its CLIENT. SUBCONTRACTOR's invoices are a material element in preparation of TolTest's invoice to its CLIENT, and as such, TolTest must require that SUBCONTRACTOR invoice TolTest promptly. Invoices received by TolTest more than thirty (30) days after either the end of each month or completion of this Purchase Order, whichever time is the lesser, will only be paid to the extent such invoices can be included in TolTest's invoice to its CLIENT. TolTest will diligently pursue payment of SUBCONTRACTOR's invoices by its CLIENT and TolTest shall, within ten (10) days after receipt of such payment, make payment to SUBCONTRACTOR. All invoices must reference the Purchase Order Number, Job Number, include an invoice number, and completed and executed lien waivers (Exhibits 2 and 3) to be processed for payment. Incomplete invoices will be rejected and returned to the SUBCONTRACTOR.

SUBCONTRACTOR shall submit one original and one copy (complete with any necessary backup information) of all invoices not more than once per month. Invoices submitted by SUBCONTRACTOR will: (a) accurately describe the Work services rendered during the invoice period; (b) reference the TolTest Purchase Order number; and (c) include any applicable equipment, labor and/or material warranty cards, and copies of inspection reports, etc. applicable to invoice items. Invoice amounts for progress payments shall be based on a percentage of work completed for each bid item or completed quantities of approved unit rate bid items through the invoice period. TolTest will approve the percentages/quantities before acceptance of the invoice. Unless otherwise prescribed by law, TolTest may retain 10 percent of each approved payment.

TolTest Purchase Order Agreement – Form 702
Revised 8/16/05