IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACME CONTRACTING, LTD.,

        Plaintiff,

                              Case No. 2:07-cv-10950

v.

                              Hon. Sean F. Cox

TOLTEST, INC., and BERKLEY REGIONAL
INSURANCE COMPANY,

        Defendants.

_____/

| | |
|---|---|
| J. Christian Hauser (P57990) | Richard M. Kerger (Ohio #0015864) |
| FRASCO CAPONIGRO | Kimberly A. Conklin (Ohio #0074726) |
| WINEMAN & SCHEIBLE, PLLC | KERGER & ASSOCIATES |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 1668 Telegraph Road, Suite 200 | 33 S. Michigan Street, Suite 100 |
| Bloomfield Hills, MI 48302 | Toledo, OH 43604 |
| (248) 334-6767 / (248) 334-0999 FAX | (419) 255-5990 / (419) 255-5997 FAX |
| ch@frascap.com | rkerger@kergerkerger.com |
| | |
| | William J. Lamping (P30785) |
| | VESTEVICH, MALLENDER, DUBOIS |
| | & DRITSAS, P.C. |
| | Attorneys for Defendants |
| | 6905 Telegraph Road, Suite 300 |
| | Bloomfield Hills, MI 48301-3160 |
| | (248) 642-1920 / (248) 642-2095 FAX |
| | wlamping@vmddlaw.com |

_____/

**PLAINTIFF ACME CONTRACTING, LTD.'S
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Plaintiff ACME Contracting, Ltd., ("ACME") through its attorneys, Frasco Caponigro

Wineman & Scheible, PLLC, states for its Response to Defendants' Motion for Summary

Judgment as follows:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................ii

ISSUES PRESENTED............................................................................................................v

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................1

STANDARD OF REVIEW .....................................................................................................6

ARGUMENT AND ANALYSIS ..............................................................................................7

    A.   ACME Has Presented Sufficient and Documented Evidence to Establish TolTest Has
        Breached The Agreement Entered Into Between The Parties ...............................................7

    B.   ACME Has Presented Sufficient Facts To Support Its Fraud And Misrepresentation
        Claims Against TolTest And Accordingly Summary Judgment Should Be  Denied ...........13

    C.   ACME Is Entitled To Payment Under A Theory Of Quantum Meruit For The T&M Work
        Performed Under Contract 11000-04.....................................................................................14

    D.   ACME Has Established An Account Stated Claim And Therefore Summary Judgment
        Should Be Denied ..................................................................................................................14

CONCLUSION....................................................................................................................16

## TABLE OF AUTHORITIES

### CASES

*Adams v. Noel*, 233 Mich. 594; 207 N.W. 817 (1926) .................................................. 16

*Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463; 666 N.W.2d 271 (2003).............. 14

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................. 6

*E.C. Nolan Co., Inc. v. State of Michigan*, 58 Mich. App. 294; 227 N.W.2d 323.................. 11, 13

*Gregg v. Allen-Bradley, Co.,* 801 F.2d 859, 861 (6th  Cir.1986) ........................................ 6

*Hollowell v. Career Decisions, Inc.*, 100 Mich. App. 561, 570; 298 N.W.2d 915 (1980)........... 14

*John E. Green Plumbing and Heating, Inc. v. Turner Construction Company*,
  742 F.2d 965 (6th Cir.1984) ........................................................................ 10, 11

*Kaunitz v. Wheeler*, 344 Mich. 181; 73 N.W.2d 263 (1955) ........................................ 16

*Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) ........................................ 6

*Leonard Refineries, Inc v. Gregory*, 295 Mich 432; 295 NW 215 (1940) .................................. 15

*Lichter v. Mellon-Stuart Co.*, 305 F.2d 216 (3rd Cir. 1962)........................................ 11

*Phoenix Contractors, Inc. v. General Motors Corporation*, 135 Mich. App. 787;
  355 N.W.2d 673 (1984) ............................................................................ 10

*U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ...................................... 6

*Wood v. O'Callaghan*, 140 Mich. 598; 104 N.W. 36 (1905) ........................................ 16

### STATUTES

Fed. R. Civ. P. 56(b) ................................................................................ i

O.R.C. §4113.62 .................................................................................. 11

### OTHER AUTHORITIES

Fed. R. Civ. P. 56................................................................................ i

Fed.R.Civ.P. 56(c) ................................................................................ 6

Title 28, U.S.C. §1441 ............................................................................ 6

## **RULES**

Fed.R.Civ.P 56(C) ............................................................................................................ 1

## ISSUES PRESENTED

The issues presented in Defendants' Motion for Summary Judgment are as follows:

1.    Did TolTest breach its contract with Acme?

      Plaintiff Responds:           Yes.

      Defendants Respond:       No.

2.    Did TolTest fraudulently or innocently induce ACME into signing a contract by promising to pay for its services?

      Plaintiff Responds:           Yes.

      Defendants Respond:       No.

3.    Is ACME entitled to payment under theories of account stated and quantum meruit?

      Plaintiff Responds:           Yes.

      Defendants Respond:       No.

<u>**BRIEF IN OPPOSITION**</u>

## I.   INTRODUCTION

Defendants request this Court dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P 56(C) on the basis that there are no material questions of material fact that demonstrate TolTest, Inc. ("TolTest") breached the contract, or that ACME Contracting, Ltd., ("ACME") is entitled to compensation under theories of quantum meruit, fraud, innocent misrepresentation and account stated. For the reasons discussed below, Plaintiff respectfully requests this Court deny Defendants' Motion, and in the alternative, grant Plaintiff's Motion for Partial Summary Disposition previously filed with this Court.

## II.   BACKGROUND

As set forth more fully in Plaintiff's Counter Statement of Disputed Facts, and in its Motion for Partial Summary Disposition, TolTest has breached the contract entered into between the parties. In addition, TolTest has refused to pay ACME for additional work it performed outside the scope of the original agreement at the written direction of TolTest. Finally, TolTest continues to deny ACME payment for the inordinate and unexpected delays and disruptions encountered on the jobsite as a direct result of TolTest's active interference throughout the term of the Project.

### A.   THE PROJECT

This case concerns the demolition and subsequent site work of the Electronics Research Building ("ERB") and Neely Research Reactor ("Neely Reactor") at the Georgia Tech Nanotechnology Research Center in Atlanta, Georgia (the "Project").

### B.     TRADE CONTRACT 11000-01

On or about April 14, 2006, the Whiting-Turner Contracting Company ("W-T") and TolTest entered into Trade Contract 11000-01 in the amount of $2,112,430.00 wherein TolTest agreed to perform certain environmental abatement and demolition work ("Work") at the Project.

Shortly thereafter, ACME entered into a Subcontract Agreement ("Agreement") with TolTest on or about June 9, 2006 in the amount of $1,050,018.00 wherein ACME agreed to perform the demolition and minor site work component of Trade Contract 11000-01. (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 2). Specifically, ACME was responsible for the demolition and site work of the ERB and Neely Reactor at the Georgia Tech Nanotechnology Research Center, while TolTest would perform abatement of asbestos, inventoried waste, PCBs and lead on the structures in question. The Agreement incorporated by reference the construction schedule ("Project Schedule") created by TolTest dated May 8, 2006 that provided ACME sixty-seven (67) days to complete the Work. (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 3).

The Project Schedule prepared by TolTest called for ACME to begin demolition on the ERB, and then proceed to the dismantling of the Neely Reactor. Both demolition activities were to run concurrently, with the abatement of the Neely Reactor overlapping the abatement of the ERB.  The Project Schedule indicated TolTest would turn over the ERB to ACME on Friday, May 19, 2006, and that demolition on the ERB Building would commence on or about Monday, May 22, 2006 and conclude twenty-four (24) days later.

However on May 19, 2006, a fire broke out in the ERB that required a complete building evacuation while dozens of fire crews extinguished the blaze. It was subsequently discovered that the source of the fire was a flashover of volatile mastic remover, coupled with TolTest's

failure to de-energize the electrical outlets in the second floor abatement area. Due to the fire in the ERB caused by TolTest's negligence, ACME was not permitted to begin demolition until June 3, 2006, sixteen (16) days later than scheduled. (Doc. 1, Complaint, Exhibit 4). The delay was significantly longer than the one (1) day delay asserted by TolTest (TolTest Statement of Facts, ¶9).

Pursuant to the Project Schedule, ACME was to commence demolition of the Neely Research Reactor on May 24, 2006.  However, as a direct result of TolTest not following its own work plan and its overall inability to properly coordinate and manage its own forces, TolTest was still performing work inside the Neely Reactor, specifically, asbestos abatement clearance monitoring as late as June 21, 2006. ACME's work was further delayed for an additional three (3) weeks due to the fact TolTest failed to dismantle its scaffolding inside the reactor.

Finally on July 14, 2006 (***fifty-two days later than anticipated***), TolTest directed ACME to proceed with the demolition of the Neely Reactor. (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 4). From July 14, 2006 through July 28, 2006, ACME removed the Neely Reactor dome and the overhead crane system. During this entire component of the Work, ACME was compelled to deal with the presence of PCB containing paint, lead based paint, and conflicting personal protective equipment measures that was never anticipated in the contract specifications or bid documents.[1]

ACME began demolition of the Neely Reactor on August 6, 2006 and it quickly became apparent the environmental containment method utilized by TolTest was too small and too low for ACME's equipment, specifically the hydraulic shear, to work effectively.  Further

---

[1] Due to TolTest's failure in its obligation to perform adequate abatement of the Neely Reactor dome, encapsulation of remaining asbestos debris fixed to the underside of the dome was required in order to obtain clearance air sampling.

complicating matters was that due to the small dimensions of the segmented containment area, as well as the precarious and shoddy construction of the containment system erected by TolTest, the polyvinyl sheeting would routinely droop and develop holes, impeding the use of the hydraulic shear within the structure.[2] Additionally, due to the lack of properly designed ventilation of the containment area by TolTest, the interior workspace reached temperatures of 160 degrees Fahrenheit, an unsafe temperature for crews to work.

C.     TRADE CONTRACT 11000-04

During the course of the Project, W-T and TolTest entered in further discussions to expand TolTest's scope of work to include grading, site work and the installation of underground utilities ("Earthwork") once the ERB and Neely Reactor had been demolished. Again, TolTest turned to ACME to perform the majority of the Earthwork and requested ACME submit a proposal to perform this work.

Consistent with TolTest's request ACME submitted a proposal to perform the Earthwork. Meanwhile, TolTest and W-T were negotiating their own contract and on May 19, 2006, TolTest entered into Trade Contract 11000-04 with W-T to perform the Earthwork.[3] The problem that arose however was that the scope of work contained in Trade Contract 11000-04 and agreed to be performed by TolTest was ***considerably different*** than the scope of work contemplated for in ACME's original proposal. Said another way, TolTest wanted ACME to perform a noticeably enlarged scope of work (primarily shoring) but for the same price quoted in its earlier bid.

---

[2] As part of the demolition process and to conform with the applicable environmental regulations, the exterior of the Neely Reactor was required to be completely contained to insure there was no discharge of hazardous materials into the environment.

[3] As it turned out, ACME and TolTest were never able to resolve the issues and negotiations between the two parties eventually came to an end in late July, early August, 2006.

(Exhibit 1, Affidavit of Michael Bates). When TolTest refused to acknowledge the changed scope of work, ACME walked away from the negotiations.

Without ACME as a subcontractor TolTest found itself locked into a contract (Trade Contract 11000-04) that it was unable to perform under its own forces. As a result on July 27, 2006, W-T issued its Notice of Default to TolTest. (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 5). With the threat of termination looming over its head, TolTest immediately directed ACME to perform the Earthwork on a time and materials basis ("T&M") utilizing the unit prices found in the Agreement. (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 6). For the next several weeks, ACME performed the site work and grading activities as defined in Trade Contract 11000-04 on a T&M basis as directed by TolTest.

**D.     Current Procedural Posture**

Despite fully completing its work in early October, 2006, ACME has not been paid for any of its work performed after July 25, 2006. What is most troubling however is that there is no question of fact that between December 21, 2006 and March 14, 2007, TolTest was paid $484,271.96 for Trade Contract 11000-01 and $574,889.75 for Trade Contract 11000-04. Of these amounts, ACME is owed $454,615.07 for the base contract work performed under Trade Contract 11000-01 and $399,371.85 for T&M work performed under Trade Contract 11000-04.

When it became apparent that TolTest was improperly withholding money that was due and owing ACME, ACME filed the instant lawsuit on February 2, 2007 in the Livingston County Circuit Court. In its Complaint, ACME seeks damages in excess of $2,300,000.00 for the base contract work performed and not yet paid for, the T&M work performed at the direction of TolTest, as well as payment for the additional costs incurred as a result of the differing site

project specifications, delays and interferences caused exclusively by TolTest. Shortly thereafter, Defendants TolTest and Berkley Regional Insurance Company ("Berkley") removed the case to this Court pursuant to Title 28, U.S.C. §1441.

## III.    STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).  In evaluating a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor.  *U.S. v. Diebold,* 369 U.S. 654, 655 (1962).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Gregg v. Allen-Bradley, Co.,* 801 F.2d 859, 861 (6th Cir.1986).  "This burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving parties' case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  *Gregg,* 801 F.2d at 861.

## IV.   ARGUMENT AND ANALYSIS

A.   **ACME HAS PRESENTED SUFFICIENT AND DOCUMENTED EVIDENCE TO ESTABLISH TOLTEST HAS BREACHED THE AGREEMENT ENTERED INTO BETWEEN THE PARTIES**

### 1.   TolTest breached Trade Contract 11000-01 by failing to pay ACME as required under the Agreement

Contrary to TolTest's assertion, ACME does indeed allege that TolTest violated a particular provision of the Agreement. So there is no misunderstanding, TolTest has breached the Agreement by failing to pay ACME pursuant to Paragraph 8 the Agreement. Specifically, Paragraph 8 of the Agreement states in part:

> PAYMENT. For services rendered, TolTest agrees to pay SUBCONTRACTOR (ACME) as specified herein…TolTest will diligently pursue payment of SUBCONTRACTOR's (ACME) invoices by its CLIENT (W-T) and ***TolTest shall, within ten (10) days after receipt of such payment make payment to SUBCONTRACTOR (ACME)***. (Emphasis added).

Based on the contract language above, there can be no question that TolTest, within ten (10) days of receiving payment from W-T, is required to pay ACME.

Between December 21, 2006 and March 14, 2007, TolTest was paid $484,271.96 for Trade Contract 11000-01 and $574,889.75 for Trade Contract 11000-04.[4] Meanwhile, ACME has not been paid for any of its work performed after July 25, 2006. To date, TolTest has predicated its refusal to pay ACME on the premise that the Agreement contains "pay-when-paid" language, and that ACME has failed to submit proper lien waivers (TolTest Brief in Support, p 4).

For example, on December 4, 2006, TolTest's general counsel William E. Wenner wrote as follows:

---

[4] A comprehensive analysis and factual basis demonstrating that TolTest has been paid by W-T is provided for in ACME's Brief in Support of its Motion for Partial Summary Judgment, Doc. 14.

> …ACME know[s] that the subcontract between TolTest and
> ACME is a "pay when paid" subcontract and that payment from
> TolTest's client, Whiting-Turner is predicated upon receipt by
> Whiting-Turner of original lien waivers from TolTest, ACME and
> all lower tier vendors and subcontractors. **The reason ACME has
> not received payment from TolTest is that TolTest has not
> received payment from Whiting-Turner**. (emphasis added).

Although admittedly this may have been the case on December 4, 2006, it certainly does

not hold true at this point in the proceedings for the reason that there is no question of fact that

TolTest has been paid by W-T for ACME's work performed under Trade Contracts 11000-01

and 11000-04.

TolTest has further relied on not paying ACME on the basis that ACME has failed to

submit original lien waivers from its (ACME's) subcontractors and vendors. Again, in his

December 4, 2006 letter, Mr. Wenner writes:

> TolTest has not received payment from Whiting-Turner because
> ACME has not supplied TolTest with original lien waivers from its
> vendors and subcontractors.

Again, the above statement is not supported by the facts. As evidenced by the documents

attached as Exhibit 12 to ACME's Brief in Support of its Motion for Partial Summary Judgment

(Doc. 14), ACME supplied both TolTest and W-T with original full unconditional waivers from

its subcontractors and vendors months ago. In fact on November 21, 2006, Robert J. Leduc,

Vice-President of TolTest drafted an email advising his project manager as follows:

> **Lance, the original of the lien waivers from ACME are in**.
> **Unfortunately they were just sitting in Accounting**. They will be
> on their way to the jobsite, today. (Exhibit 2) (Emphasis added).

The above email catches TolTest in an incredible lie. In its Response to ACME's Motion

for Partial Summary Judgment, and in its own Motion for Summary Judgment, TolTest

repeatedly predicates its refusal to pay ACME because it (ACME) has not submitted original lien

waivers. (Doc. 34, TolTest Brief in Support, p 4). **Meanwhile, TolTest's own Vice-President**

***admits receiving the original lien waivers nearly a year ago!*** Mr. Leduc's email confirms what ACME has been stating from the onset; to wit: that ACME has previously submitted all of the paperwork necessary to process payment, however it has been TolTest's incompetence, bad faith and dilatory conduct that has prevented payment from being made as required under the Agreement.

It should also be pointed out that ACME has followed the same procedure to be paid throughout the entire course of this Project. Said another way, the application process employed by ACME in the beginning of the job (when the payments were processed and disbursed) is the same as it was at the end of the job (when all payments were withheld).

Finally, there is no substance or merit in TolTest's argument that the maximum amount owed ACME is $348,686.73 based on the issuance of ten (10) unilateral deductive change orders. (Doc. 34, TolTest Brief in Support, p 3). Even more ridiculous is TolTest's argument that these unilateral deductive change orders were never objected to by ACME. (Id.). Notably the deductive change orders at issue were issued unilaterally, and more importantly, never signed by representatives of ACME. Issuing a unilateral change order does not make it acceptable to ACME. To be certain, ACME disputes the deductive change orders issued by TolTest and does not recognize them as valid or legitimate.

The Agreement provided TolTest would pay ACME $1,050,018.00 for work performed under Trade Contract 11000-01. (Doc. 34, TolTest Brief in Support, p 3). Additionally, both parties do not dispute that TolTest has paid $595,402.93 for work performed under Trade Contract 11000-01. (Doc. 34, TolTest Brief in Support, p 3; Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment). Accordingly ACME is owed $454,615.07 ($1,050,018.00 less $595,402.93) for Trade Contract 11000-01. Finally, there is no dispute that

between December 21, 2006 and March 14, 2007, TolTest was paid $484,271.96 for Trade

Contract 11000-01 (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary

Judgment). TolTest is in possession of ACME's money, and pursuant to the Agreement, payment

in the amount of $454,615.07 should be released immediately. TolTest's Motion for Summary

Judgment on Count II of ACME's Complaint should be denied, and in the alternative, ACME's

Motion for Partial Summary Judgment should be entered.

> **2.      ACME is entitled to additional payment for the inordinate and unexpected delays and disruptions encountered during the course of its work as a direct result of TolTest's active interference**

TolTest next argues that ACME is not entitled to extra compensation for any suspension,

delay or acceleration not specifically allowed and paid to TolTest by its Client (Defendants'

Brief in Support, p 4). The "no damage for delay clause" being relied on by TolTest however is

not favored by courts and, as a result, is strictly construed in favor of the delayed party. *John E.*

*Green Plumbing and Heating, Inc. v. Turner Construction Company*, 742 F.2d 965 (6th Cir.1984)

*cert den* 471 U.S. 1102 (1985). For example, the "no damage for delay" clause will not be

enforced in the following situations:

> 1.      The delay was caused by the active interference of the other contracting party;
>
> 2.      The delay was of a kind not contemplated by the parties;
>
> 3.      The delay amounted to an abandonment of the contract;
>
> 4.      The delay was caused by the bad faith on the part of the other contracting party.  See, *Phoenix Contractors, Inc. v. General Motors Corporation*, 135 Mich. App. 787; 355 N.W.2d 673 (1984).

As provided for in *Phoenix*, *supra*, the Michigan Court of Appeals held that the presence

of only one of the several exceptions identified above is sufficient to render the "no damages for

delay" clause inoperative. Specifically, the court stated that "it was only necessary for the jury to

find the presence of one of these exceptions in order to support a plaintiff's verdict." *Phoenix* at 796-797. Likewise Ohio also allows a contractor to recover delay damages despite a "no damages for delay" clause. Under O.R.C. §4113.62, "no damages for delay" clauses are unenforceable when the delay was caused by the contractor's "actions or inactions".[5] Ohio's case law also allows an exception for delays not contemplated by the parties at the time they entered into the contract.

With respect to the instant case, there are sufficient facts presented by ACME to demonstrate that the delay and disruption incurred by ACME was ***never*** contemplated when it entered into the Agreement with TolTest. In *E.C. Nolan Co., Inc. v. State of Michigan*, 58 Mich. App. 294; 227 N.W.2d 323, *lv den* 394 Mich. 805 (1975), the Michigan Court of Appeals considered whether delays experienced on the project were contemplated by the parties, ultimately holding they were not and as a result, refused to enforce the "no damages for delay" clause.

ACME's delay and disruption claim stems from the performance conditions expected at the time of bidding compared to the performance conditions actually encountered during the term of the Project, which ultimately resulted in increased difficulty and costs of performance to ACME. The difference between a claim for pure delay and a claim for disruption is that the impact of disruption on the contractor's work is usually a loss in efficiency. Because of this distinguishing characteristic, a contractor is still entitled to receive disruption damages even in contracts that contain no-damage-for-delay-damages. See *John E. Green*, *supra*; *Lichter v. Mellon-Stuart Co.*, 305 F.2d 216 (3rd Cir. 1962).

---

[5] O.R.C. §4113.62(C)(2) states in part that "Any provision of a construction subcontract…that is made part of a construction subcontract…that waives or precludes liability for the delay during the court of a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, or that waives any other remedy for a construction subcontract when the cause of delay is a proximate result of the owner's or contractor's act or failure to act, is void and unenforceable as against public policy."

There is no question that ACME was delayed in the performance of its work. In fact, TolTest repeatedly admits that it too was delayed and significantly behind schedule. As stated *supra*, there came a point in time when TolTest was so far behind schedule, W-T issued a Notice of Default on both Trade Contracts 11000-01 and 11000-04. This is confirmed by Lance Parsons, TolTest's project manager:

> Q.  At this time when Mr. Lint was apparently dissatisfied with Acme's progress to date, where was TolTest in their performance? Were they on schedule?
>
> A.  No.  That's why we were being thrown off, because we were ultimately the prime.  ***No, we were not on schedule***. (Emphasis added) (Dep of Lance Parsons, p 36).

Ms. Cynthia Martin, TolTest's procurement manager, also confirmed in her deposition that TolTest was behind schedule. She testified as follows:

> Q. Okay.  Is there a point in time where you recall speaking to Mr. Parsons more often than normal, I would say?
>
> A.    Yes.
>
> Q.     And what was that particular focus of time that you dealt with Mr. Parsons with more frequency?
>
> A.     I would say it would be the latter – it was the latter part of August, going into September.
>
> Q.     Okay.  And what was the substance of those conversations that you were talking to Mr. Parsons about?
>
> A.    ***Trying to get the project back on schedule***.
>
> Q.    And what was your understanding of the status of the project at that time?
>
> A.    ***It was behind schedule***. (Emphasis added) (Dep of Cynthia Martin, p 28).

More significantly, there is no question that TolTest, like ACME, has lost a massive amount of money on this Project. Again, Lance Parsons stated in his deposition:

> Q.    You don't know or you're not aware of the cost (of the Project)?
>
> A.    I don't pay that -- I've got a lot of work going on, so this right here is Brian's baby as Project Manager.  He's the one to know.  I look at the overall broad picture.  I told you before, we are losing $800,000 (on the Project).  I know the overall picture, but I don't know that part down there.
>
> Q.    How do you know you are losing $800,000?
>
> A.    Because I get the project tracking report for every month for the jobs.  So I see the overall picture for every job, so I know the dogs and I know the jobs making money. (Dep of Lance Parsons, pp 95-96).

As with the plaintiff in *E.C. Nolan, Co.*, ACME experienced delays that were totally unreasonable and never anticipated when it entered into the Agreement with TolTest. Specifically, the original schedule prepared by TolTest provided ACME with 67 days to complete its work. In reality, ACME did not complete its work until October 12, 2006, ***79 days later than anticipated***. Due to the nature of the work in question, ACME could not perform its work (demolition of buildings) until TolTest had fully completed its own work (abatement of the asbestos containing materials from those same buildings). The delays and disruptions encountered by ACME were all a direct result of TolTest's active interference and mismanagement throughout the life of the Project.

## B.    ACME HAS PRESENTED SUFFICIENT FACTS TO SUPPORT ITS FRAUD AND MISREPRESENTATION CLAIMS AGAINST TOLTEST AND ACCORDINGLY SUMMARY JUDGMENT SHOULD BE DENIED

TolTest's internal documents and evidence that it has been paid by W-T present evidence sufficient to demonstrate a fraud perpetrated by it against ACME. On more than one occasion,

TolTest has based its refusal to pay ACME on the fact that it either has not been paid by W-T, or that ACME has not submitted the original lien waivers necessary to process payment. Both of these arguments are absolutely not true and are indicative of TolTest's fraud and / or innocent misrepresentation.

From the onset, TolTest represented to ACME that it would be paid for the work it performed pursuant to the terms and conditions of the Agreement. Relying on TolTest's promises that it would pay ACME for work done under Trade Contract 11000-01 and the T&M work performed under Trade Contract 11000-04, ACME commenced demolition and performed a significant amount of Earthwork. There is no dispute W-T paid TolTest for this work, however TolTest continues to withhold payment to ACME. TolTest promised to pay ACME as provided for in the Agreement, and based upon these representations, ACME entered into the Agreement and performed the work in question.

### C.    ACME IS ENTITLED TO PAYMENT UNDER A THEORY OF QUANTUM MERUIT FOR THE T&M WORK PERFORMED UNDER TRADE CONTRACT 11000-04

To recover under the equitable theory of quantum meruit, ACME must show: (1) the receipt of a benefit by the defendant from the plaintiff; and (2) which benefit it is inequitable that the defendant retain. *Hollowell v. Career Decisions, Inc.*, 100 Mich. App. 561, 570; 298 N.W.2d 915 (1980). An unjust enrichment claim is not one in express contract, but it is one in implied contract. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463; 666 N.W.2d 271 (2003).

In the instant matter, ACME seeks payment in the amount of $399,371.85 for the T&M work performed at the direction of TolTest. TolTest's assertion that ACME has never produced invoices, back-up or daily reports in support of this figure is again misplaced (Doc. 34, TolTest Brief in Support, p 7). At the completion of the Project, and once the final figures had been

calculated, ACME submitted this information to TolTest in a letter dated January 2, 2007 (Exhibit 1, Affidavit of Michael Bates).[6]

Interestingly, TolTest **concedes** that ACME is entitled to compensation for the T&M work it performed outside the boundary of the Agreement, but to prevail ACME has the burden of demonstrating with particularity the amount of the benefit retained by TolTest. (Doc. 34, TolTest Brief in Support, p 7). ACME has previously provided, and is again providing, the value of the T&M work performed, and therefore is entitled to payment under a theory of quantum meruit. Additionally, ACME has established that TolTest has been paid $574,889.75 by W-T for this same work. Accordingly this is the benefit retained by TolTest. At a minimum, ACME has presented a question of fact that precludes summary judgment on this issue and therefore, TolTest's motion must be denied.

### D. ACME HAS ESTABLISHED AN ACCOUNT STATED CLAIM AND THEREFORE SUMMARY JUDGMENT SHOULD BE DENIED

An account stated is an agreement between parties who have had previous transactions of a monetary character and that all items of accounts representing such transactions are true and that a balance struck is correct, together with a promise for the balance of the payment. *Leonard Refineries, Inc v. Gregory*, 295 Mich 432; 295 NW 215 (1940). ACME vehemently disagrees with TolTest's assertion that the prices utilized by the parties were not agreed to, and therefore summary judgment on this count is not warranted.

TolTest agreed to pay TolTest consistent with the terms and conditions of the Agreement entered into between the parties. Additionally, TolTest directed ACME to perform T&M work and to utilize the unit prices contained in the Agreement (Doc. 14, ACME's Brief in Support of its Motion for Partial Summary Judgment, Exhibit 6). Any discrepancy between the amounts

---

[6] ACME is attaching the T&M sheets to the instant brief as Exhibit 3.

appears to be a fiction created entirely by TolTest to avoid payment as the price to perform the work was agreed to by both parties.

It is sufficient to constitute an account stated claim if the items constituting an account are settled upon so that nothing remains but a mere matter of computation. *Wood v. O'Callaghan*, 140 Mich. 598; 104 N.W. 36 (1905). Furthermore, one of the parties to a transaction is not precluded from claiming an account stated as to undisputed items of an account by the fact that there are also some disputed items in it. *Adams v. Noel*, 233 Mich. 594; 207 N.W. 817 (1926). As such ACME is not barred from asserting its account stated claim simply because TolTest alleges that certain items may not be due and owing.

The fact is TolTest assented to the balance due and owing ACME by making prior payments consistent with the terms and conditions of the Agreement. In any event it is well settled that if the evidence regarding the existence of an account stated is conflicting or susceptible to different inferences, **the question as to the existence of an account stated should be submitted to the jury**. *Kaunitz v. Wheeler*, 344 Mich. 181; 73 N.W.2d 263 (1955) (Emphasis added). The fact that TolTest now wants to avoid liability by asserting objections it never made during the course of the Project cannot be a basis for summary judgment.

## V.   CONCLUSION

When this Court considers the facts that have been introduced by ACME, the fact that TolTest has been paid for the work performed by ACME under Trade Contracts 11000-01 and 11000-04, the fact that ACME submitted original lien waivers nearly a year ago as required under the Agreement, the fact that ACME incurred a 79 day delay in the performance of its work, the fact that TolTest was issued a notice of default due to the fact it was significantly behind schedule, the fact that TolTest delayed and interfered with ACME's performance of this

Project, and for the other reasons stated herein, there is no alternative but to deny Defendants'
Motion for Summary Judgment.

Conversely, Partial Summary Judgment against Defendant TolTest, Inc. is proper at this
time. There are no remaining questions of fact that dispute TolTest has been paid in full for the
work performed under Trade Contracts 11000-01 and 11000-04. Further, there are no remaining
questions of fact that pursuant to the Agreement, ACME is entitled to be paid within ten (10)
days after TolTest has received payment from W-T and after ACME has submitted all of the
requisite paperwork needed to process payment. Despite the fact TolTest was been paid in full by
W-T in January, 2007, and the fact TolTest has been sitting on ACME's original lien waivers
since November 21, 2006, ACME has yet to be paid. Accordingly, Partial Summary Judgment in
the amount of $853,986.00 is proper at this time.

WHEREFORE, ACME Contracting, Ltd. respectfully requests this Court deny
Defendants' Motion for Summary Judgment, and in the alternative, grant its Motion for Partial
Summary Judgment for the reasons stated herein.

Respectfully submitted,

s/ J. Christian Hauser
FRASCO CAPONIGRO
WINEMAN & SCHEIBLE, PLLC
1668 Telegraph Road, Suite 200
Bloomfield Hills, MI  48302
(248) 334-6767
ch@frascap.com
MI Bar No. P57990

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to opposing counsel.

Respectfully submitted,

s/ J. Christian Hauser
FRASCO CAPONIGRO
WINEMAN & SCHEIBLE, PLLC
1668 Telegraph Road, Suite 200
Bloomfield Hills, MI  48302
(248) 334-6767
ch@frascap.com
MI Bar No. P57990