UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Acme Contracting, Ltd.,

    Plaintiff,

v.                                                                    Case No. 07-10950

Toltest, Inc. *et al.*,                                       Honorable Sean F. Cox

    Defendants.
_____/

**OPINION & ORDER**

This action involves a dispute over a construction subcontract agreement. The matter is currently before the Court on: 1) Plaintiff's Motion for Partial Summary Judgment; and 2) Defendants' Motion for Summary Judgment. The parties have fully briefed the issues and oral argument was heard on January 10, 2007. For the reasons set forth below, the Court shall deny Acme's Motion for Partial Summary Judgment. The Court shall grant in part, and deny in part, Defendants' Motion for Summary Judgment. The Court shall grant the motion with respect to Acme's fraud and misrepresentation claims, and deny the motion in all other respects.

**BACKGROUND**

On February 1, 2007, Acme Contracting, Ltd. ("Acme") filed this action against Defendants Toltest Inc. ("Toltest") and Berkley Regional Insurance Company ("Berkley") in Livingston County Circuit Court. The matter was then removed to this Court based on diversity jurisdiction. Acme's Six-Count Complaint asserts the following claims: "Claim on the Payment Bond" (Count I); "Breach of Contract" (Count II); "Quantum Meruit" (Count III); "Account

1

Stated" (Count IV); "Fraud" (Count V); and "Innocent Misrepresentation" (Count VI).

The matter is currently before the Court on: 1) Acme's Motion for Partial Summary Judgment (Docket Entry No. 14) and 2) Defendants' Motion for Summary Judgment (Docket Entry No. 34).

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. The Statement shall include all necessary material facts that, if undisputed, would result in summary judgment for the movant.
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.
> . . . .
> e. Facts stated in the Statement of Material Facts Not in Dispute and Counter-Statement of Disputed Facts shall be supported with appropriate citations to the record, including but not limited to the pleadings, interrogatories, admissions, depositions, affidavits and documentary exhibits. Citations to the record must be specific, i.e., cite to a discrete page or portion of deposition testimony or page(s) of documentary evidence, not simply the entire deposition or document.

In compliance with this Court's practice guidelines, the parties submitted statements of undisputed material facts in connection with each party's motion. For ease of reference, the Court shall refer to the statements of material facts submitted by the parties with respect to

Acme's Motion for Partial Summary Judgment as "SMF-A," and those submitted with respect to Defendants' Motion for Summary Judgment as "SMF-B," each followed by the appropriate paragraph number. The following material facts are gleaned from the parties' papers and the evidence submitted by the parties.

Plaintiff Acme is a contractor engaged in commercial and industrial demolition, excavation and underground site work. (SMF-B at ¶ 2).

Defendant Toltest is a contractor engaged in environmental remediation, design, management and engineering in the construction industry. (*Id*. at ¶ 1).

Whiting-Turner Contracting Company ("Whiting-Turner") is a construction manager based out of Atlanta, Georgia, which invited Toltest to bid on certain portions of a multi-phased construction project at the Georgia Tech Nanotechnology Research Center in Atlanta, Georgia. (*Id*. at ¶ 3).

Defendant Berkley is the surety on certain payment bonds issued to Whiting-Turner by Toltest in regards to the Georgia Tech Project. (*Id*. at ¶ 4).

Subcontract No. 11000-01:

In January 2006, TolTest, through project manager Wayne Lint ("Lint") and Acme, through its employee Dave McDonald ("McDonald"), collaborated to submit a bid to Whiting-Turner on the portion of the Georgia Tech project identified as "Subcontract No 11000-01: Demo / Abatement of : Neely Reactor, Electronics Research Building and Site." (*Id*. at ¶ 5). The work plan was such that TolTest was to perform the hazardous materials abatement and Acme was to demolish the buildings and perform the related site groundwork. (*Id*. at ¶ 6).

Whiting-Turner awarded TolTest Subcontract No. 11000-01 and the final contract

documents were executed on April 14, 2006. (SMF-B at ¶ 7; *see also* undisputed evidence submitted by Def. in support of same). TolTest mobilized to the Georgia Tech site on April 17, 2006, and began its abatement work in the Electronics Research Building ("ERB") shortly thereafter. (SMF-B at ¶ 8; *see also* undisputed evidence submitted by Def. in support of same).

The parties agree that, at some point in May, 2006, a fire broke out in the ERB. (SMF-B at ¶ 9). The parties disagree as to the date of the fire and also disagree as to how long the fire delayed work in the ERB.

Defendants contend that the fire broke out on May 12, 2006. In support of that position they rely on the deposition testimony of Lint. Lint, however, testified that he believed the fire occurred on April 12th. (Lint Dep. at 168). Lint also testified that the fire resulted in a one day delay in work in the ERB. (Lint Dep. at 109).

Plaintiff contends that the fire occurred on May 19, 2006, and delayed it from performing its work in the ERB. In support of that position, Plaintiff relies on the affidavit of Michael Bates ("Bates"), who states that "on May 19, 2006, a fire broke out in the ERB that required a complete building evacuation while dozens of fire crews extinguished the blaze" and that due to the fire "ACME was not permitted to begin demolition until June 3, 2006, sixteen (16) days later than scheduled." (Bates Affidavit at ¶ 5).

Lint testified that Acme mobilized to the site on or about May 31, 2006. (Lint Dep. at 168). Acme contends that it mobilized to the site at some unspecified date prior to May 31, 2006, but only cites the allegations in its complaint to support that assertion.

"On June 12, 2006 Acme signed TolTest 'Purchase Order P001652', which included Attachment A: 'Subcontractor Services Agreement Terms and Conditions' and 'Attachment B:

Scope of Work' and incorporated the terms of Whiting Turner's Subcontract No. 11000-01. These documents comprised the entire agreement between Acme and Toltest and will hereinafter be referred to as 'the Agreement.'" (SMF-B at ¶ 11).

Under the Agreement, Acme was required to perform all labor, supervision, equipment and transportation to complete the Scope of Work referenced in Trade Contract 11000-01 with certain exceptions. (SMF-B at ¶ 12).

With respect to the demolition of the ERB, Acme was to complete all tasks outlined in Paragraph B, items 1-8, in the section found on page T-18 of the Trade Contract 11000-01. (SMF-B at ¶ 13). With respect to the demolition of the Neely Reactor, Acme was to perform all tasks outlined in Paragraph B, items 8, 11-17, in the section found on page T-17 of the Trade Contract 11000-01. (SMF-B at ¶ 14).

The Agreement provides as follows with respect to the schedule for the work:

SCHEDULE: The Work shall be performed according to the schedule outlined by TolTest, which may be modified per the instructions of the TolTest Project Manager. . . . SUBCONTRACTOR shall not be entitled to extra compensation for any suspension, delay or acceleration not specifically allowed and paid to TolTest by its CLIENT for SUBCONTRACTOR's benefit.[1]

(The Agreement, Attachment A at ¶ 3; SMF-B at ¶ 15).

The Agreement sets forth terms for payment at Attachment A, ¶ 8. Specifically, TolTest agreed to compensate Acme "as specified herein." Moreover, all invoices must be "supported by documentation that may be required by the Client (Whiting-Turner)" and "all invoices must reference the Purchase Order Number, Job Number, include an invoice number and completed

---

[1] There has been no evidence submitted to this Court indicating whether or not such amounts were paid to Toltest.

and executed lien waivers (Exhibits 2 and 3) to be processed for payment. Incomplete invoices will be rejected and returned to the SUBCONTRACTOR." (The Agreement, Attachment A at ¶ 8; SMF-B at ¶ 16).

The Agreement provides that the validity, interpretation and performance of it shall be governed by Ohio law. (The Agreement, Attachment A at ¶ 12; SMF-B at ¶ 17). The Agreement also provides that the Agreement constitutes the entire Agreement between Toltest and Acme and the terms cannot be altered, amended or appealed absent a duly executed written instrument. (The Agreement, Attachment A at ¶ 13; SMF-B at ¶ 18).

The Agreement defined Acme's period of performance as May 30, 2006, to August 30, 2006. (The Agreement at 1; SMF-B at ¶ 19). Defendants contend that Acme's last day on the Georgia Tech site was October 11, 2006. (SMF-B at ¶ 20)(relying on Cook Affidavit at ¶ 9). Acme contends that its last day at the site was October 12, 2006. (SMF-B at ¶ 20)(relying on unspecified Acme Daily Reports).

Acme's scope of work under the Agreement included the following: Identify all utilities under the new building footprint and demo completely regardless of depth. (SMF-B at ¶ 22). Cook's Affidavit states, and Acme offers no evidence to dispute, that:

> 1) Subsequent to October 11, 2006, TolTest discovered utilities during excavation activities to include piping and wire under the new building footprint.
>
> 2) Upon discovering utilities, TolTest was required to engage the services of a subcontractor to use ground penetrating radar over the entire site to ensure that all utilities had been now removed.
>
> 3) TolTest self-performed the removal of the remaining utilities at a cost of $5,650.37.

(Cook Affidavit; *see* SMF-B at ¶¶ 21, 23, 24).

The Agreement provides that the base amount to be paid to Acme by TolTest was $1,010,018.00. (SMF-B at ¶ 25). The Agreement also provides, in the section relating to scope of services, that Acme "may be ordered in writing by TolTest, without invalidating this AGREEMENT, to make changes in the Work within the general scope of this AGREEMENT, the price and time of performance being adjusted accordingly pursuant to a SUBCONTRACTOR Change Order Agreement (Exhibit 1)." (The Agreement, Attachment A at ¶ 2).

The parties have divergent positions as to change orders that were issued relating to the Agreement. Defendants contend that a total of ten change orders were issued under the Agreement during the project. In support of that position, they submit the Affidavit of Cindy Martin, who states that "Toltest approved and issued ten change orders with regard to Acme for work performed under Trade Contract Number 11000-01 and as a result the final contract amount was $944,089.66." (Martin Affidavit at ¶ 7).

Acme does not appear to dispute that those ten change orders were, in fact, issued by TolTest to Acme. Acme asserts, however, that it "disagrees with TolTest's decision to unilaterally issue deductive change orders. ACME never consented to the ten change orders in question, nor does ACME accept these deductions to be legitimate or based in fact." (Bates Affidavit at ¶ 13).

The parties agree that, to date, TolTest has paid Acme $595,402.93 for work performed through August 31, 2006 as reflected in payments made under Acme's applications 1 through 4. (SMF-B at ¶ 27).

Defendants contend that TolTest rejected Acme's payment applications 5-7 because the amounts requested in the applications did not account for the change orders and were not

7

accompanied by appropriate lien waivers for Acme or its subcontractors. It contends that without Acme's lien waivers, Whiting-Turner refused to pay TolTest until it could obtain a release from its surety and that Whiting-Turner released a payment to TolTest on January 22, 2007. It contends that, to date, Acme has not submitted properly supported pay applications with executed waivers to TolTest for any work performed on the Project after August 31, 2006. (*See* Defs.' SMF-B at ¶¶ 28-30).

Acme admits that its pay applications were rejected by TolTest. It contends, however, that it has submitted to TolTest on "multiple occasions the necessary lien waivers, sworn statements, payment applications and other documents required of it under the Agreement to process payment." (SMF-B at ¶¶ 28 & 30). Acme contends that TolTest owes it $454,615.07 for work it performed under Trade Contract 11000-01. (SMF-B at ¶ 42).

Trade Contract 11000-04:

In April 2006, Whiting-Turner invited TolTest to bid on a separate groundwork, grading, and shoring phase of the Georgia Tech project. (Cook Affidavit at ¶ 4). TolTest and Acme again collaborated on bidding this second phase. Acme submitted a proposal to TolTest to perform work under Trade Contract 11000-04 and then TolTest submitted its bid to Whiting-Turner. Whiting-Turner accepted TolTest's bid and on or about July 11, 2006, TolTest entered into a second subcontract with Whiting-Turner: Subcontract Number 11000-04 for 'Grading and Site Utilities.'" (SMF-B at ¶ 34). Acme and TolTest, however, did not enter into a written contract following the award of that business.

Defendants contend that on August 2, 2006, TolTest submitted a Purchase Order to Acme but Acme did not sign the document or otherwise enter into an agreement with TolTest in

8

accordance with its previous bid. (SMF-B at ¶ 35; Martin Afft.). Acme contends that a problem arose because "TolTest unilaterally expanded the scope of work contained in Trade Contract 11000-04, while at the same time, attempting to hold ACME to its original bid proposal." (SMF-B at ¶ 35; Bates Affidavit).

In any event, despite the lack of a signed purchase order, Acme performed some of the site work and grading activities contained in Trade Contract 11000-04. (SMF-B at ¶¶ 36-37). The parties appear to agree that such work was to be performed on a time and materials basis.

TolTest contends that Acme performed work on July 27, 2006, August 2, 2006, August 3, 2006, August 4, 2006, and August 7, 2006. (Cook Afft.). TolTest contends that, other than daily reports, Acme has not provided it with a breakdown of time and materials for any work outside of the scope of Purchase Order P001652 and Subcontract 11000-01 that it has not paid. (Cook Afft. at ¶ 8). TolTest appears to assert that it only owes Acme $5,427.95 for work on a time and materials basis (*see* SMF-B at ¶ 42), but it is unclear how it arrives at that number.

Acme contends it performed such work from July 5, 2006 through August 27, 2006. (Bates Afft. at ¶ 37). Acme contends that it has submitted the back-up documentation for the time and materials work to TolTest and that the total owed for such work is $399,371.85. (*Id.* at ¶ 39 & 42). Acme further claims that TolTest owes it $1,900,000 for additional work and incurred expenses as a result of differing site project specifications, delays and interferences encountered during the work that were caused by Toltest. (*Id.*).

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

9

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

### I. Plaintiff's Motion for Partial Summary Judgment

Acme's motion does not specify whether it seeks partial summary judgment against Toltest, Berkley, or both. Although the motion also fails to specify as to which of the six counts in its complaint it seeks partial summary judgment, it appears to seek partial summary judgment on the breach of contract claim.

Acme concedes that there are questions of fact that exist with respect to the delay damage component of its complaint. Acme contends, however, that there is no dispute that Acme is entitled to payment in full for: 1) $454,615.07 for the base contract work performed under Trade Contract 11000-01 and 2) $399,371.85 for the time and materials work performed under Trade Contract 11000-04.

Acme asserts that because the general contractor paid TolTest in full for the work under the two Trade Contacts at issue, Acme is entitled to payment under the clear and express language of the agreement. Acme relies on language in Paragraph 8 of the Agreement that states

that "Toltest will diligently pursue payment of SUBCONTRACTOR's invoices by its CLIENT and Toltest shall, within ten (10) days after receipt of such payment make payment to SUBCONTRACTOR." (Agreement, Attachment A, at ¶ 8). Acme asserts that although TolTest previously told Acme is was not getting paid because TolTest had not been paid by Whiting-Turner, it contends that it can establish that TolTest has now been paid in full by Whiting-Turner. Acme notes that TolTest has also previously indicated it was not getting paid because it had not submitted the required lien waivers from its subcontractors. Acme asserts that it has, in fact, submitted the required lien waivers and attaches those lien waivers as Exhibit 12 to its motion.

Thus, in sum, Acme contends that it has complied with all conditions necessary for payment for the work it performed and that TolTest's repeated failure to pay it is a material breach of the contract.

Acme notes that TolTest claims it incurred additional costs, which it intends to offset against the claims made by Acme. It states that the amount of the claimed setoff is $93,867.45, which consists of $18,000 in utilities wash vault corrections and $75,867.45 in grading contract costs. Acme asserts that amount is "inflated due to the fact that TolTest is seeking recovery of the $75,867.45 in an entirely separate lawsuit currently pending in Ohio state court" against Acme's surety. (Acme's Br. at 11). Acme asserts that TolTest is "attempting to take two-bites out of the apple" by suing Acme's surety in state court, while at the same time, using that same figure as an offset in this litigation. Citing no authority to support the proposition, Acme states:

> TolTest cannot use as a setoff the $75,867.45 in the instant litigation while advancing a lawsuit to recover the same amount in an entirely separate case. Presuming arguendo that TolTest succeeds on its setoff defense here and prevails in the state court lawsuit, the result would be a double recovery, or windfall, which is completely inappropriate.

(*Id.*).

In response to Plaintiff's Motion, Defendants first contend that Plaintiff's motion is procedurally improper.

As to the merits, Defendants contend that under the plain language of the Agreement, Acme could not be entitled to the $853,986 that it seeks. They note that under Paragraph 8 of the Agreement, TolTest's receipt of payment from Whiting-Turner is just one of the many conditions precedent that must be met before it is required to pay Acme. They state that TolTest paid payment applications 1-4 for a total of $595,402.93 but rejected applications 5-7 because they either failed to account for various change orders, were not accompanied by executed lien waivers, or contained charges for work that TolTest disputed. Defendants therefore contend that TolTest was within its rights under the contract to reject the payment applications and invoices.

Defendants further assert that the contract price after the ten change orders was $944,089.66 and TolTest already paid Acme $595,402.93. Therefore, the most Acme would possibly be entitled to under the contract, if all conditions precedent to payment were met, would be $348,686.74.

As to the set-off defense argument, Defendants assert that Acme has failed to meet its burden to establish its right to judgment as a matter of law irrespective of any of Defendants' affirmative defenses.

The Court agrees that Plaintiff's Motion for Partial Summary Judgment must be denied. The Court concludes that the conflicting evidence that has been submitted by the parties establishes that numerous issues of fact exist as to what amount, if any, Acme is currently owed under the contract, including whether all conditions precedent to payment under the contract have

been met.

## II. Defendants' Motion for Summary Judgment

### A. Plaintiff's Breach of Contract Claim:

Defendants seek summary judgment as to Acme's breach of contract claim, asserting that Acme does not allege that Toltest violated any provision of the Agreement. It also asserts that, given the change orders and the payments to Acme thus far, the most it could owe to Acme would be $348,686.73.

Acme responds by asserting that it has fully complied with all conditions precedent to payment, but, in violation of Paragraph 8 of the Agreement, TolTest has refused to pay it.

Again, the Court concludes that numerous issues of fact exist as to the contract claim such that neither party is entitled to summary judgment. The Court shall therefore deny this asserted ground for relief.

### B. Plaintiff's Fraud and Innocent Misrepresentation Claims:

Next, Defendants assert that Acme cannot establish the essential elements of a fraud claim, or an innocent misrepresentation claim, under Michigan law.

Under Michigan law, the essential elements of a fraud claim are: 1) the defendant made a material misrepresentation; 2) the representation is false; 3) when the defendant made the representation, the defendant knew that it was false; 4) the defendant made the representation with the intention that the plaintiff would act upon it; 5) that plaintiff acted in reliance upon it; and 6) that he thereby suffered injury. *Hi-Way Motor Company v. International Harvester Co.*, 398 Mich. 330, 336 (1976).

"Generally, a claim of fraud cannot be based on a promise of future conduct." *Derderian*

*v. Genesys Health Care Sys.*, 263 Mich.App. 364, 378 (2004)(citing *Hi-Way Motor, supra*). Rather, an action for fraud must be "predicated upon a statement relating to a past or existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor*, 398 Mich. at 336. "An exception to this rule exists, however, if a promise is made in bad faith without the intention to perform it." *Derderian*, 263 Mich.App. at 379. Evidence of such fraudulent intent, in order to come within the exception, must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter. *Id.*

Here, Acme alleges that in order to induce Acme to enter into the Agreement with it, and perform work to complete the project, TolTest represented to Acme that it would make full payment for work rendered in a timely fashion. (Compl. at ¶ 79). It further asserts that the "representations were false when made." (*Id*. at ¶ 82).

Thus, Acme's fraud claim is not based upon a statement relating to a past or presently existing fact. Rather, it is impermissibly based solely upon a promise of future conduct.[2] Moreover, Acme has not alleged, nor has it presented any evidence to establish, that the promise was made in bad faith without the intention to perform it. The bad faith exception to the general rule does therefore not apply.

Accordingly, the Court shall grant summary judgment in favor of Defendants with respect to the fraud count.

Acme's innocent misrepresentation claims fails on the same basis.

A false statement of fact, made without knowledge of its falsity or intent to deceive, is

---

[2]Plaintiff's counsel acknowledged at the hearing that the fraud claim in its complaint is based solely on future conduct.

actionable under Michigan's doctrine of innocent misrepresentation if relied upon by the other party to the contract to their detriment and the party that made the false statement is unjustly enriched. *Derderian,* 263 Mich.App. at 380-81. As with a fraud claim, the misrepresentation must relate to a past or existing fact and not be promissory in nature. *Id.*

Here, Acme's innocent misrepresentation claim is based solely upon the allegation that TolTest represented to Acme that TolTest would make full payment for work rendered in a timely fashion, and although innocently made, that representation was false when made. (Compl. at ¶¶ 88-91). Moreover, the "bad faith" exception applicable to fraud claims does not apply because innocent misrepresentation exists only where there is no intent to deceive. *Derderian,* 263 Mich.App. at 381. Therefore, because Acme's innocent misrepresentation claim relies on promises of future conduct, the Court shall also grant summary judgment with respect to this claim.

## C. **Plaintiff's Quantum Meruit Claim:**

Next, Defendants assert that TolTest has not established entitlement to payment under a theory of quantum merit.

Defendants assert that Acme cannot recover under the theory of quantum meruit with respect to Subcontract 11000-01 because there is an express contract in effect that controls the relationship and obligations of the parties. At the same time, however, Defendants state that "TolTest does not dispute that Acme might be entitled to some amount of compensation for work performed outside the scope of Subcontract 11000-01." (Defs.' Br. at 7). Defendants assert, however, that Acme has not yet produced sufficient documentation for such payments.

Acme has not sought summary judgment in its favor with respect to this claim. Rather,

Acme contends that it has presented a question of fact as to whether it is entitled to some payment under the theory of quantum meruit.

Given that Defendants concede that Acme is entitled to some amount of compensation for work performed outside of the contract, the Court shall deny Defendants' request for summary judgment on the quantum meruit claim.

**D.      Plaintiff's Account Stated Claim:**

Finally, Defendants challenge Acme's account stated claim and seek summary judgment in their favor with respect to that claim.

"It has long been established under Michigan law that '[a]n account stated means a balance struck between the parties on a settlement; and where a plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance.'" *Price v. Annuity Investors Life Ins. Co.*, 244 Fed. Appx. 654, 661 (6th Cir. 2007)(quoting *Watkins v. Ford*, 69 Mich. 357 (1888)). The Michigan Supreme Court has made clear that the conversion of an open account into an account stated is an operation by which the parties assent to a sum as the correct balance due from one to the other.

In order to demonstrate that its fees for services to TolTest had become an account stated, Acme has to prove that TolTest either expressly accepted the bills by paying them or failed to object to them within a reasonable time. *Price*, 244 Fed. Appx. at 661; *Keywell and Bosenfeld v. Bithell*, 254 Mich.App. 300, 331 (2002).

Here, it is undisputed that TolTest paid some of the payment applications that Acme sent to TolTest. In addition, an account stated claim can also be established by failing to object to

16

bills within a reasonable time. Although there is evidence to indicate that TolTest did not pay some of the payment applications that Acme sent to it, it also appears that TolTest communicated to Acme that it was not getting paid because Whiting-Turner had not yet paid TolTest. Defendants have not submitted any evidence to this Court to indicate that TolTest communicated to Acme, within a reasonable time following receipt of the payment applications, that it was not paying the applications submitted because it disputed the rates, the quality or quantity of work done or any other aspects of the work. Thus, giving Acme the benefit of all reasonable doubts, there is a dispute of fact concerning whether there was an account stated. *Keywell, supra*, at 332-33.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Acme's Motion for Partial Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** the motion with respect to Acme's fraud and misrepresentation claims and hereby **DISMISSES THOSE CLAIMS WITH PREJUDICE**. The Court **DENIES** the motion in all other respects.

**IT IS SO ORDERED**.

                                                          s/Sean F. Cox
                                                         Sean F. Cox
Dated: January 28, 2008                    United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 28, 2008, by electronic and/or ordinary mail.

                                                         s/Jennifer Hernandez
                                                         Case Manager