UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Acme Contracting, Ltd.,

    Plaintiff,

v.   Case No. 07-10950

Toltest, Inc. *et al.*,   Honorable Sean F. Cox

    Defendants.
_____/

**OPINION & ORDER
REGARDING RETROACTIVITY OF SUPERSEDEAS BOND AND
OBJECTIONS TO GARNISHMENT**

    Following a bench trial, this Court issued an Opinion awarding Plaintiff Acme Contracting, Ltd. ("Acme" or "Plaintiff") a damage award of $2,025,330.65.  Following additional briefing by the parties relating to applicable interest, the Court issued the final judgment in this matter on July 17, 2008.  The matter is currently before the Court on the following issues: 1) whether the supersedeas bond in this case applies retroactively to extinguish the Fifth Third Bank garnishment; 2) whether Defendants have stated valid objections to the garnishment; and 3) whether the Court should grant Defendants' request and delay "payover" of the funds for 30 days to allow Defendants to seek appellate review.  For the reasons stated below, the Court concludes that the stay does not operate retroactively and that the objections to the garnishment are without merit.  Nevertheless, in order to allow Defendants an opportunity to seek appellate review of this Opinion & Order prior to the release of the funds, the Court shall order that Fifth Third Bank hold the funds at issue for 30 days following the issuance of this

1

Order.

## BACKGROUND

Following a bench trial, this Court issued an Opinion on **May 5, 2008**, in which it awarded Plaintiff a damage award of $2,025,330.65. (Docket Entry No. 64). The Opinion directed the parties to "meet and confer in order to submit to the Court, within fourteen (14) days of the date of t[he] Opinion, a proposed final judgment, which includes calculation of applicable interest." (5/5/08 Opinion at 31).

The parties could not reach agreement, however, as to the amount of interest to be awarded. After full briefing by the parties, the Court ultimately issued an Opinion on July 17, 2008, regarding the amount of interest to be awarded. (Docket Entry No. 68). On July 17, 2008, the Court also entered the final judgment in this matter. (Docket Entry No. 69). Pursuant to the judgment, Plaintiff was awarded damages of $2,025,330.65, prejudgment interest of $71,545.56, for a total of $2,096,876.21. (*Id*.).

Pursuant to FED. R. CIV. P. 62(a), execution on the judgment was automatically stayed for a period of ten days (i.e., until July 31, 2008). During that ten day period, Defendants did not file a notice of appeal, nor did they file a supersedeas bond or request court approval of same.

On August 6, 2008, Plaintiff served a writ of garnishment on Fifth Third Bank. The Garnishee Disclosure form from Fifth Third Bank indicates that sufficient funds to satisfy the entire judgment are currently in Defendant Toltest's account with Fifth Third Bank.

On August 6, 2008, Defendants filed a "Motion for Stay of Execution Pending Approval of Supersedeas Bond" (Docket Entry No. 72). In that motion, Defendants stated that they intended to file a notice of appeal in this action no later than August 18, 2008, and that they

intended to obtain a supersedeas bond. Defendants stated that they were "proceeding as quickly as possible to obtain the bond" but did not explain why they were unable to obtain a bond within the ten day automatic stay provided by FED. R. CIV. P. 62(a). Defendants' motion asked the Court to exercise its discretion and enter an order granting a stay of execution as to the judgment until such time that Defendants are able to obtain and file a supersedas bond for approval by the Court.

Plaintiff filed a response in opposition to the motion, asserting that was no basis for requested relief. Plaintiff emphasized that Defendants had more than three months following this Court's May 5, 2008 Opinion & Order to "familiarize themselves with the appellate process and to secure a supersedeas bond."

On August 14, 2008, Defendants filed a reply brief that stated, in pertinent part, as follows:

> Acme's current attempts at garnishment are the very reason TolTest seeks a temporary stay until it is able to post a superedeas bond. Acme has created unnecessary paper work and proceedings [sic] will require TolTest to file objections to garnishments that will be rendered moot as soon as the Court approved [sic] TolTest's supersedeas bond.

(Docket Entry No. 75 at 1-2). On that same date, Plaintiff filed a "Sur-Reply" brief stating:

> TolTest has no one to blame but itself for not having a supersedeas bond filed with the Court before execution on the Judgment commenced. More importantly, TolTest cannot now retroactively seek the relief the supersedeas bond provides once the garnishment has frozen assets sufficient to satisfy the Judgment. That is the real issue at hand, and as provided for in ACME's Reply Brief [D/E 74], TolTest's procurement of an appeal bond does nothing to affect the money in the Fifth Third Account.

(Docket Entry No. 76).

The Court held a status conference and hearing on August 29, 2008, at which time the

Court granted Defendants' request for approval of a supersedeas bond in the requested amount of $2,400,000. In an Order dated August 29, 2008, the Order further explained that the Court's granting of Defendants' motion seeking approval of the supersedeas bond[1] "does not resolve all the issues before the Court relating to the supersedeas bond and the writ of garnishment to Fifth Third Bank." (8/29/098 Order). The Court therefore ordered supplemental briefing on the issues that remained before the Court: 1) whether the Court's approval of the supersedeas bond applied retroactively to extinguish the Fifth Third Bank garnishment; and 2) If not, whether Defendants' objections to the Fifth Third Bank garnishment are valid. (*Id*.).

During supplemental briefing Defendants requested that, in the event the Court were to conclude that the bond does not apply retroactively and find the objections to the garnishment invalid, the Court order "the payover of the garnishment be delayed 30 days to allow defendant to seek review in the Court of Appeals." (Docket Entry No. 99 at 3).

ANALYSIS

A.  Does The Supersedeas Bond In This Case Apply Retroactively To Extinguish The Fifth Third Bank Garnishment?

Plaintiff takes the position that the filing of the supersedeas bond, after the expiration of the ten-day automatic stay and after Plaintiff executed a valid garnishment on Fifth Third Bank, does not retroactively extinguish that garnishment.

In their initial briefs, Defendants took the position that once this Court approved a supersedeas bond, the garnishments that were executed by Plaintiff after the ten-day automatic stay were automatically "rendered moot" (i.e., the stay would operate retroactively to extinguish

---

[1] In the August 29, 2008 Order, the Court also denied Defendants' "Motion for Stay of Execution Pending Approval of Supersedeas Bond" as moot and for lack of merit

the existing garnishments). (*See e.g.*, Docket Entry No. 75 at 1-2). Defendants offered no authority, however, to support that position. Later, Defendants took the position that this Court has the discretion to order that the stay apply retroactively and should exercise that discretion under the facts of this case.

This Court has been unable to find any Sixth Circuit authority on the narrow issue presented. Nevertheless, the Court finds that majority of courts that have considered this issue – including the Eastern District of Michigan – have concluded that a pre-bond levy or garnishment is not extinguished by operation of law upon the Court's approval of a Rule 62(a) supersedeas bond. *See e.g., Ribbens Int'l v. Transport Int'l Pool, Inc.*, 40 F.Supp.2d 1141, 1145 (C.D. CA. 1999)(collecting cases); *Larry Santos Productions v. Joss Organization, Inc.*, 682 F.Supp. 905 (E.D. Mich. 1988).

In *Larry Santos Productions*, the Honorable Julian Abele Cook denied the Defendant's request for retroactive application of a stay under similar circumstances. In that case, a judgment in the amount of $301,202 was entered in favor of the plaintiff on October 27, 1987. After the expiration of the ten-day automatic stay of FED. R. CIV. P. 62(a), but approximately a week before the plaintiff had filed a supersedeas bond, the defendant attempted to satisfy the judgment by serving a writ of garnishment upon one of defendant's debtors.

On January 8, 1988, the district court granted a stay after defendant filed a supersedeas bond in an amount approved by the court. On January 12, 1988, the defendant requested that the court dissolve the prior writ as a violation of the stay. Thus, the district court had to determine whether its stay operated retroactively. *Id*. at 905. The court noted that in *Imperial Commodities Corp. v. S.S. Maria Auxiliadora*, 115 F.R.D. 305 (S.D.N.Y. 1987), the court held that a stay did

not operate retroactively under the Federal Rules of Civil Procedure.  "There the Court determined that no statutory or discretionary authority allowed it to dissolve a garnishment which had been served after judgment but before the grant of stay pending appeal." *Id*. at 906.  Judge Cook agreed that until a bond is filed, the stay which is conditioned on such a bond is inoperative and explained:

> To hold otherwise would render the last sentence of FED.R.CIV. P. 62(d) meaningless.  That sentence reads, 'The stay is effective when the supersedeas bond is approved by the court.'  This provision, taken together with the 10-day 'automatic stay' provision of FED. R.CIV. P. 62(a), clearly indicates that without a court-approved stay and a bond if one is ordered, the appealing party is protected against attempts to satisfy a final judgment only for the first 10 days thereafter.
>
> Furthermore, allowing retroactive stays would enable a judgment debtor to delay the filing of a bond until threatened by the efforts of a creditor to execute upon the judgment, and then benefit from the bond as though it had been filed before execution was attempted.  Such a rule would subvert the essential purpose of appeal bonds, which are meant to condition stays of execution upon the providing of security in advance.  This Court cannot be expected to perform for [Defendant] the legerdemain requested here any more than an insurer would be expected to write a policy after the loss had occurred.
>
> Although situations may be imagined in which the denial of a retroactive application of a stay would result in manifest injustice, this Court believes that the instant case is not such a situation.  [Plaintiff] served his writ of garnishment after his right to do so had vested, without any hint of fraud and in the absence of any agreement not to execute the judgment. [Defendant's] stated reasons for delay and the cost of its bond are insufficient to persuade this Court that manifest injustice has resulted.

*Id*. at 906-907.

This Court agrees with Judge Cook's conclusion that to allow a stay to operate retroactively, after the expiration of the ten-day period in FED. R. CIV. P. 62(a), would render the last sentence of FED. R. CIV. P. 62(d) meaningless.

The Court is not aware of any binding authority establishing that this Court has statutory

authority, or the discretion, to order that the supersedeas bond filed in this case operates retroactively to extinguish the existing garnishment.

Moreover, even if this Court has such discretion, the Court would decline to exercise such discretion under the particular circumstances presented in this case. This is not a situation where the denial of a retroactive application of a stay would result in manifest injustice. Plaintiff obtained a valid judgment in this case and served its writs of garnishment only after its right to do so had vested (i.e., after the ten-day automatic stay had expired). Moreover, Defendants have not alleged any kind of fraud on the part of Plaintiff, nor have they alleged that Plaintiff agreed not to execute on the judgment after the expiration of the automatic stay.

Finally, as in the situation seen in *Larry Santos Productions*, for several months prior to the issuance of the final judgment in this case, Defendants should have been aware that they would be required to file a bond in order to stay execution of the judgment. This Court issued its Opinion & Order awarding damages of $2,025,330.65 on **May 5, 2008.** As of that date, therefore, Defendants should have been aware that they would be required to file a supersedeas bond in order to stay execution of the judgment past the ten-day automatic stay. Thus, Defendants had from May 5, 2008, until the expiration of the automatic stay on July 31, 2008 – more than two and a half months – to obtain a supersedeas bond and seek approval of same. The Court therefore concludes that this is a case wherein Defendants had ample time to secure a supersedeas bond prior to the expiration of the automatic stay under FED.R.CIV. P. 62(a).[2]

---

[2] The Court further rejects, for lack of merit, Defendants' argument that they could not timely seek approval of a supersedeas bond due to Acme's delay in responding to its request for concurrence. Defendants did not even contact Plaintiff's counsel with respect to the bond issue until July 31, 2008. Moreover, the local rule requiring a party to seek concurrence before filing a motion does not require a party to hold off filing a motion until the opposing side responds. If

Accordingly, the Court concludes that the stay does not operate retroactively to extinguish the writ of garnishment that was served on Fifth Third Bank on August 6, 2008.

B.     **Are Defendants' Objections To The Fifth Third Bank Garnishment Valid?**

In this action, Acme obtained a substantial money judgment against Defendants. Rule 69 of the Federal Rules of Civil Procedure governs execution and provides, in pertinent part, as follows:

> (1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

FED. R. CIV. P. 69(a)(1).

In Michigan, a judgment creditor may proceed by means of execution and garnishment. *See* M.C.R. 2.621 (Proceedings Supplementary to Judgment); M.C.R. 3.101 (Garnishment After Judgment). M.C.L. § 600.4011(1) provides, in pertinent part, that, subject to certain exceptions:

> [T]he court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidence by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:
>
> (a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and **the personal property to be applied is within the boundaries of this state**.

M.C.L. § 600.4011(1).

---

the opposing party does not respond to a request for concurrence, the party desiring to file a motion need only state that concurrence was sought but, despite reasonable efforts, was not obtained. Local Rule 7.1(a).

8

In this case, it is undisputed that Acme served a writ of garnishment on Fifth Third Bank on August 6, 2008. Defendants filed timely objections to the writ. Pursuant to M.C.R. 3.101(K)(3), this Court is to rule on Defendants' objection and is required to notify the plaintiff, the defendant and the garnishee of the Court's decision.[3]

Defendants contend that this Court should quash the writ because it is procedurally defective in that it attempts to seize property that is located outside the State of Michigan. Specifically, Defendants contend that "Acme's attempts at garnishment should be quashed because the funds sought to be garnished are outside of the State of Michigan" and therefore not subject to garnishment under M.C.L. § 600.4011(1). (*Id*. at 10).

In support of their position that the Court should quash the garnishment because the funds are located outside of Michigan, Defendants note that TolTest is an Ohio corporation and state that it opened its account with Fifth Third Bank in Ohio. Defendants assert that there can be no dispute, therefore, that the funds are not "located" in Michigan for purposes of M.C.L. § 600.4011(1).

Acme asserts, on the other hand, that it can garnish Toltest' account with Fifth Third Bank. Acme's position is that because the funds are an intangible asset and are available to TolTest at any branch location, including the numerous locations throughout Michigan, the garnishment is valid. Acme asserts that "if the $2.1 million at issue was in the form of gold coins held in a security deposit box in Cincinnati, Ohio, or if [Acme] sought to execute a garnishment

---

[3]This Court did not hold another hearing on the objections following the supplemental briefs by the parties because, during a telephone conference with the parties on October 1, 2008, the parties both requested that the Court issue a written decision prior to their Sixth Circuit mediation scheduled for Monday, October 6, 2008.

of office equipment located in TolTest's Ohio offices," then it would generally concede that the garnishment would not be valid. However, that is not the situation before the Court.

Accordingly, the sole issue before the Court with respect to the validity of the garnishment is whether the funds in TolTest's account with Fifth Third Bank are "located" in Michigan for purposes of M.C.L. § 600.4011(1).

Neither party has directed the Court to any Michigan authority pertaining to the narrow issue before the Court. In addition, the Court has been unable to locate any Michigan or federal authority on how to determine the location of a bank account for purposes of M.C.L. § 600.4011(1).

Although TolTest's main office is in Ohio, it is undisputed that TolTest has offices and operations in Michigan (*see* Compl., and Answer to same, at ¶ 2). It is also undisputed that Fifth Third Bank has branches throughout Michigan and that it is therefore subject to the jurisdiction of Michigan courts. (Docket Entry No. 92 at 8).

As Acme notes, the funds in Toltest's account with Fifth Third Bank are an intangible asset. Numerous courts have observed that the situs of intangible property is, in truth, a legal fiction. *See e.g.*, *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1122 (5th Cir. 1985)(Recognizing that "situs of intangible property is about as intangible a concept as is known to the law.") Various courts have also found that intangible property may have more than one situs. In addition, the same intangible property may be deemed to have one situs for a particular purpose, yet another situs for a different purpose.

Although TolTest has not made any assertions that the "separate entity rule" should be applied when determining the situs of TolTest's account for purposes of M.C.L. § 600.4011(1),

10

this Court has nevertheless considered whether that rule should be applied.

The "separate entity rule," applied by some courts dealing with various garnishment issues, is that each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office. *See* 12 A.L.R.3d 1088 (citing *Bank of Montreal v. Clark*, 103 Ill.App. 163 (1903)). The purpose behind that rather ancient rule is that unless each branch of a bank is treated as a separate entity for purposes of garnishment, no branch could safely pay a check drawn by its depositor without checking with all other branches and the main office to make sure that a garnishment had not been served upon any of them. *See Digitrex, Inc. v. Johnson,* 491 F.Supp. 66, 68 (S.D. NY 1980).

Today, however, banks use highspeed computers with central indexing capabilities to keep track of accounts which, along with other sophisticated communications equipment, enable a bank with multiple branches to easily monitor checking accounts from the main branch. This has permitted the centralization at the main office of many administrative functions, such as the imposition of a hold on a depositor's account. Accordingly, as early as 1980 – more than 25 years ago -- various courts that had previously endorsed the rule began rejecting the separate entity rule as obsolete. *See, e.g., Digitrex, Inc., supra.*

This Court has been unable to find any authority indicating that Michigan courts have ever adopted the separate entity rule with respect to garnishment. Moreover, this Court concludes that such a rule is entirely obsolete in today's world of highly sophisticated and centralized banking operations. Thus, the Court concludes that the separate entity rule has no application to the issue at hand – whether, for purposes of M.C.L. § 600.4011(1), funds in TolTest's account can be considered located in Michigan.

The Court finds the fact that TolTest has the right to draw on its account at any of the numerous Fifth Third Bank branches located in Michigan to be very significant for purposes of this inquiry. This case does not involve the garnishment of certificates of deposit or similar tangible instruments that must be presented at a particular branch to obtain payment. Rather, this case involves: 1) a bank account of a corporation with operations in several states, including Michigan and Ohio; and 2) that account is with a major commercial bank that has branches in numerous states, including Michigan and Ohio. As a practical matter, the funds in TolTest's account are "located" wherever they are available for withdrawal by TolTest. Here, it is undisputed that the funds in TolTest's account are available to TolTest at any Fifth Third Bank branch – including the numerous branches that are located in Michigan. Because the funds are available to TolTest at Fifth Third Bank's Michigan branches, the Court concludes that the funds are located within the boundaries of the State of Michigan for purposes of M.C.L. § 600.4011(1).

The Court therefore finds TolTest's objections to the garnishment to be without merit.

C.  Should The Court Delay The "Payover" For 30 Days To Allow Defendants To Seek Appellate Review Of This Order?

As stated above, the Court concludes that the stay does not operate retroactively to extinguish the garnishment that was served upon Fifth Third Bank on August 6, 2008, and also finds TolTest's objections to the garnishment to be without merit. The Court must still consider, however, Defendants' request that the Court delay the "payover" for 30 days to allow Defendants to seek appellate review of this Court's rulings.

As stated *supra*, this Court has been unable to locate any Sixth Circuit authority on the retroactivity issue, and has been unable to locate any Michigan authority pertaining to whether,

for purposes of M.C.L. § 600.4011(1), funds in TolTest's account can be considered located in Michigan. The Court has therefore made its rulings based upon the language of the rules and statutes at issue and based upon reasoning in non-binding decisions that the Court finds persuasive. The Sixth Circuit may well disagree with this Court's conclusions on one or both of these issues. Because the Court is mindful of TolTest's concern that Acme may not be able to "repay the funds in the event any portion of the Court's final judgment is reversed or amended on appeal," the Court concludes that TolTest's request should be granted.

## CONCLUSION & ORDER

**IT IS ORDERED** that the stay **DOES NOT** operate retroactively to extinguish the writ of garnishment that was served upon Fifth Third Bank on August 6, 2008.

**IT IS FURTHER ORDERED** that Defendants' objections to the writ of garnishment are **WITHOUT MERIT**. Nevertheless, Fifth Third Bank shall hold the funds at issue for 30 days following the issuance of this Order, to enable Defendants an opportunity to seek appellate review of this Order.

**IT IS SO ORDERED**.

>S/ Sean F. Cox
>Sean F. Cox
>United States District Judge

Date: October 3, 2008

I hereby certify that on October 3, 2008, a copy of the foregoing document was served upon counsel of record by electronic means and by First Class Mail upon:

Fifth Third Bank Operations
Legal Entry MD 1MOC2Q
5050 Kingsley Drive
Cincinnati, OH 45263

>S/ Jennifer Hernandez
>Case Manager